1  PETER R. BOUTIN, CASB NO. 65261
   peter.boutin@kyl.com
2  CHRISTOPHER A. STECHER, CASB NO. 215329
   christopher.stecher@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  450 Pacific Ave.
   San Francisco, California 94133
5  Telephone:    (415) 398-6000
   Facsimile:    (415) 981-0136
6

7  Attorneys for Defendants
   CITIGROUP GLOBAL MARKETS, INC.,
8  SUNTRUST ROBINSON HUMPHREY, INC.,
   WELLS FARGO SECURITIES, LLC, and BNY
9  MELLON CAPITAL MARKETS, LLC (f/k/a
   MELLON FINANCIAL MARKETS, LLC)
10

ORIGINAL
FILED

FEB – 4 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

*MEJ*

13                    CV  09      0501

14  CITY OF SOUTH SAN FRANCISCO,        ) Case No. CV-09-_____
                                        )
15                    Plaintiff,        )
                                        )
16                                      ) REMOVED FROM:
              vs.                       ) Superior Court of the State of California, County
17                                      ) of San Mateo
    CITIGROUP GLOBAL MARKETS INC.,      ) Civil No. CIV 479412
18  SUNTRUST ROBINSON HUMPHREY, INC.,   )
    WELLS FARGO SECURITIES, LLC, MELLON )
19  FINANCIAL MARKETS, INC., ERNST &    ) **NOTICE OF REMOVAL**
    YOUNG LLP, RICHARD S. FULD, JR.,    )
20  CHRISTOPHER M. O'MEARA, ERIN        )
    CALLAN, MICHAEL L. AINSLIE, JOHN F. )
21  AKERS, ROGER S. BERLIND, THOMAS H.  )
    CRUIKSHANK, MARSHA JOHNSON EVANS,   )
22  SIR CHRISTOPHER GENT, ROLAND        )
    HERNANDEZ, HENRY KAUFMAN, JOHN D.   )
23  MACOMBER, and DOES 1 through 20,    )
                                        )
24                                      )
                      Defendants.       )
25  _____)

26

27

28

KYL_SF473419

NOTICE OF REMOVAL — CASE NO. CV-09-_____

1  **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND**

2  **THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that Defendants CITIGROUP GLOBAL MARKETS,

4  INC., SUNTRUST ROBINSON HUMPHREY, INC., WELLS FARGO SECURITIES, LLC, and

5  BNY Mellon Capital Markets, LLC (f/k/a Mellon Financial Markets, LLC) (collectively the

6  "Underwriter Defendants" or the "Removing Defendants"), pursuant to 28 U.S.C. sections 1334(b),

7  1367, 1441, 1446, and 1452, hereby remove the entire above-captioned civil action, and all claims and

8  causes of action therein, from the Superior Court for the State of California, County of San Mateo, to

9  the United States District Court for the Northern District of California, San Francisco Division.[1]

10      As grounds for removal, Removing Defendants state as follows:

11      1.      On or about December 16, 2008, Plaintiff CITY OF SOUTH SAN

12  FRANCISCO ("Plaintiff" or the "City") filed this action in the Superior Court for the State of

13  California, San Mateo County. This case was assigned a docket number of CIV 479412.[2]

14      2.      Defendant Wells Fargo Securities LLC was served with the complaint on

15  January 5, 2009. Defendant BNY Mellon Capital Markets, LLC (f/k/a Mellon Financial Markets,

16  LLC) was served on January 7, 2009. Defendant Suntrust Robinson Humphrey, Inc. was served on

17  January 8, 2009. Defendant Citigroup Global Markets, Inc. was served on January 9, 2009. See

18  Exhibit "B" hereto.

19      3.      Thus, this Notice is being filed within thirty days of service on the Removing

20

21  [1] By removing this matter, Removing Defendants do not waive, and expressly preserve, any and all defenses they may have, including, but not limited to, lack of personal jurisdiction.

22

23  [2] This action is similar to numerous other actions, also in their incipiency, pending in this Court and in the United States District Courts for the Western District of Arkansas, the Eastern District of Arkansas, the Southern District of New York and the Eastern District of New York. The related

24  actions pending in this Court are Zenith Ins. Co. v. Fuld, et al., C 08-5352 SC, The San Mateo County Investment Pool v. Fuld, et al., C 08-5353 SC and Solton v. Fuld, et al., C 08-5617 SC. Certain

25  defendants in those matters have moved the Judicial Panel on Multidistrict Litigation ("MDL Panel")

26  to centralize the actions already pending in this Court and other federal district courts in the Southern District of New York pursuant to 28 U.S.C. section 1407 for coordinated or consolidated pretrial

27  proceedings before the Honorable Lewis A. Kaplan. The MDL Panel heard argument on that motion on January 29, 2009. Defendants will also request that the MDL Panel transfer the instant action to

28  the Southern District of New York for pretrial coordination with the other related actions.

KYL_SF473419

NOTICE OF REMOVAL — CASE NO. CV-09-_____

1 │ Defendants and is timely filed under 28 U.S.C. section 1446(b).

2 │     4.    The other defendants named in this action — Richard S. Fuld, Jr., Christopher

3 │ M. O'Meara, Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha

4 │ Johnson Evans, Sir Christopher Gent, Roland Hernandez, Henry Kaufman, John D. Macomber, Erin

5 │ Callan (collectively the "Individual Defendants") and Ernst & Young LLP — have not been served.

6 │ However, the undersigned is informed and believes that these other defendants consent to this Notice

7 │ and seek the removal of this action to the United States District Court for the Northern District of

8 │ California, San Francisco Division.

9 │     5.    Plaintiff City alleges that it is "a public entity that invested monies in an

10 │ investment pool organized and managed by the County of San Mateo." Complaint ¶ 1. Plaintiff

11 │ further alleges that "as a participant in the San Mateo County Investment Pool," "Plaintiff purchased

12 │ medium term notes" issued by Lehman Brothers Holdings Inc. ("Lehman") and suffered losses on

13 │ such investments as a result of Defendants' alleged wrongful conduct relating to the notes. Complaint

14 │ ¶¶ 1, 7. In particular, Plaintiff alleges that, because "certain registration statements filed by Lehman

15 │ pursuant to the offering of the Lehman Notes contained material misstatements and omissions,"

16 │ Plaintiff "was not aware, and could not have become aware, of Lehman's serious financial problems

17 │ while investing in the SM Pool." Complaint ¶ 3. Plaintiff asserts causes of action for violations of

18 │ Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), aiding and abetting a breach of

19 │ a fiduciary duty, violation of California Corporation Code sections 25400, et seq., fraud, and negligent

20 │ misrepresentation. See Complaint ¶¶ 88-124.

21 │     6.    Removal is appropriate here because this Court maintains bankruptcy "related

22 │ to" jurisdiction, pursuant to 28 U.S.C. sections 1334(b) and 1452(a), and supplemental jurisdiction

23 │ pursuant to 28 U.S.C. section 1367 for any claims or parties not subject to jurisdiction under

24 │ Section 1334.

26 │ <div align="center">**BANKRUPTCY "RELATED TO" JURISDICTION**</div>

27 │     7.    On September 15, 2008, Lehman, the issuer of the securities that are the subject

28 │ of this action and the corporation for which the Individual Defendants serve or served as officers or

1  directors, filed a voluntary petition for reorganization under Chapter 11 of the United States
2  Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, In re
3  Lehman Brothers Holdings Inc., Case No. 08-13555, et seq. (the "Lehman Bankruptcy Proceedings").
4  See Complaint ¶ 6. The Lehman Bankruptcy Proceedings are currently pending before United States
5  Bankruptcy Judge James M. Peck.

6  8.  This Court has original jurisdiction over this action pursuant to 28 U.S.C.
7  section 1334(b), which provides that United States district courts shall have jurisdiction over all civil
8  proceedings, inter alia, "related to cases under title 11 [the United States Bankruptcy Code]." This
9  action may be removed to this Court by Removing Defendants under 28 U.S.C. section 1452(a),
10  which provides for removal of an action to a district court if it has original jurisdiction under Section
11  1334, because this action is "related to" a case under Chapter 11, namely the Lehman Bankruptcy
12  Proceedings.

13  9.  This action is "related to" the Lehman Bankruptcy Proceedings, and therefore is
14  removable to this Court pursuant to 28 U.S.C. section 1452(a), because the outcome of this case will
15  have a conceivable effect on the Lehman bankruptcy estate. An action is "related to" a bankruptcy
16  proceeding if "the outcome of the proceeding could conceivably have any effect on the estate being
17  administered in bankruptcy." Dunmore v. United States, 358 F.3d 1107, 1113 (9th Cir. 2004), quoting
18  Fietz v. Great W. Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988); Kaonohi Ohana, Ltd. v.
19  Sutherland, 873 F.2d 1302, 1306 (9th Cir. 1989).

20  10.  An action is "related to" a bankruptcy proceeding even when the claims are
21  between third parties. Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) ("An action is related
22  to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action
23  (either positively or negatively) and which in any way impacts upon the handling and administration
24  of the bankrupt estate.") (internal citations omitted); Vacation Village, Inc. v. Clark County, Nevada,
25  497 F.3d 902, 911 (9th Cir. 2007) (affirming that test for whether "third-party" claims relate to a
26  bankruptcy proceeding is "whether the outcome of [the third party claim] could conceivably have any
27  effect on the estate being administered in bankruptcy"); see also American Hardwoods, Inc. v.
28  Deutsche Credit Corp., 885 F.2d 621, 623-24 (9th Cir. 1989).

- 3 -  KYL_SF473419

1             11.     This action relates to Lehman's bankruptcy rights because: (i) Lehman was the

2 issuer of the securities that are the subject of the action; (ii) the County of San Mateo, whose Treasurer

3 purchased the Lehman Notes for the San Mateo Investment Pool in which plaintiff participated, has

4 already filed a proof of claim in the Lehman Bankruptcy Proceedings for the very losses plaintiff

5 appears to be claiming here, and has submitted itself and the claim to the jurisdiction of the Lehman

6 Bankruptcy Proceedings, see Exhibit "A"; (iii) certain Removing Defendants have claims to

7 indemnification for defense costs and expenses, and any judgment, from Lehman for this action as a

8 result of contractual commitments made by Lehman to the Underwriter Defendants; (iv) at least

9 certain, if not all, Removing Defendants and Individual Defendants have statutory claims to

10 contribution from Lehman in the event a judgment is entered against them in this action; (v) the

11 Individual Defendants have a contractual right to indemnification by Lehman and for advancement of

12 defense costs and expenses by Lehman in connection with this action, pursuant to Lehman's bylaws;

13 and (vi) the Individual Defendants have rights to coverage under directors and officers insurance

14 policies issued to Lehman.

15             12.     Courts in the Ninth Circuit regularly find that third-party proceedings are

16 "related to" bankruptcy proceedings when one or more defendants have a claim for indemnification or

17 contribution against the debtor estate or a claim to coverage under insurance provided by the bankrupt

18 corporation, even where their rights are contingent or merely potential. See Pacific Life Ins. Co. v.

19 J.P. Morgan Chase & Co., No. 03-CV-813, 2003 WL 22025158, at *1 (C.D. Cal. June 30, 2003)

20 (ruling that "related to" jurisdiction existed because of indemnification agreements between

21 underwriters and the bankrupt entity, and stating that claims of contribution and indemnification, even

22 where contingent, established "related to" jurisdiction); Carpenters Pension Trust For Southern

23 California v. Ebbers, 299 B.R. 610, 612-13 (C.D. Cal. 2003) (denying motion to remand and finding

24 potential for indemnification was enough to create jurisdiction after claims against officers and

25 directors of WorldCom were "related to" the bankruptcy); Kennilworth Partners II LP v. Crisman, No.

26 00-CV-3218, 2001 WL 30534, at *3 (N.D. Cal. Jan. 3, 2001) (directors and officers insurance

27 provided by the bankrupt corporation was enough to make proceedings against the defendants "related

28 to" for the purposes of subject matter jurisdiction) (remanded on unrelated grounds); In re Enron

1    Corp., 296 B.R. 505, 508 (C.D. Cal. 2003) (finding that indemnification agreements between

2    distributing banks and originating company were sufficient to make claims against banks "related to"

3    the bankruptcy proceedings of the distributing company); In re Sizzler Rests. Intl., Inc., 262 B.R. 811,

4    818-19 (Bankr. C.D. Cal. 2001) (holding that employee indemnification provides an adequate basis

5    for "related to" jurisdiction even though indemnification was conditioned on subsequent proceeding).

6            13.      For any claims or parties not subject to jurisdiction under 28 U.S.C.

7    section 1334, supplemental jurisdiction lies under 28 U.S.C. section 1367 because all claims against

8    all parties in this case form part of the same case or controversy.

## OTHER PROCEDURAL REQUIREMENTS

11            14.      This is not a core proceeding under 28 U.S.C. section 157(b). Removing

12    Defendants do not consent to entry of final orders or judgment by any bankruptcy judge.

13            15.      In accordance with 28 U.S.C. section 1446, Exhibit "B" includes copies of all

14    process, pleadings and orders served upon Removing Defendants in this action.

15            16.      Removing Defendants will promptly serve a copy of the Notice of Removal on

16    Plaintiff's counsel and file with the Clerk of the Superior Court of the State of California, San Mateo

17    County, a Notice of Filing of Notice of Removal pursuant to 28 U.S.C. section 1446(d).

18            17.      All Defendants in this matter who have been served with the Complaint and

19    Summons join in this Notice of Removal.

20            18.      This Notice of Removal is signed pursuant to Federal Rule of Civil Procedure,

21    Rule 11 and Bankruptcy Rule 9011.

## VENUE & JURISDICTION

24            19.      Plaintiff filed the State Court Action in the Superior Court of the State of

25    California, in and for the County of San Mateo. Pursuant to 28 U.S.C. §§ 84, 1441 and 1446(a),

26    venue lies in the district and division in which the State Court action is pending; that is, the United

27    States District Court, Northern District of California.

28            WHEREFORE, the Removing Defendants remove this action in its entirety from the

-5-                  KYL_SF473419

1  Superior Court of the State of California, San Mateo County, to the United States District Court for

2  the Northern District of California, San Francisco Division.

3

4  DATED: February 4, 2009

PETER R. BOUTIN
5  CHRISTOPHER A. STECHER
   KEESAL, YOUNG & LOGAN
6

7  Of Counsel:
   MITCHELL A. LOWENTHAL
8  BREON S. PEACE
   CLEARY GOTTLIEB STEEN & HAMILTON LLP
9  One Liberty Plaza
   New York, New York 10006
10 Telephone: (212) 225-2000

11 Attorneys for Defendants
   CITIGROUP GLOBAL MARKETS, INC., SUNTRUST
12 ROBINSON HUMPHREY, INC., WELLS FARGO
   SECURITIES, LLC, and BNY MELLON CAPITAL
13 MARKETS, LLC (f/k/a/ MELLON FINANCIAL
   MARKETS, LLC)
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -                                                      KYL_SF473419

NOTICE OF REMOVAL — CASE NO. CV-09-

1

2  *City of South San Francisco v. Citigroup Global Markets Inc., et al.*
   USDC – Northern District Case No. CV 09-0501 MEJ
3

4

5

6

7

8

9

10                          **NOTICE OF REMOVAL**

11

12

13              # EXHIBIT A

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF473419

NOTICE OF REMOVAL

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Lehman Brothers Holdings Inc. | Case Number: 08-13555(JMP) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): County of San Mateo

Name and address where notices should be sent:
Dennis Drebsky
Nixon Peabody LLP
437 Madison Ave. - 23 Floor
Telephone number: New York, NY 10022
(212) 940-3091

Michael Murphy
County Counsel
County of San Mateo
400 County Center
Redwood City, CA 94063

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 155,000,000 principal amount

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges

2. Basis for Claim: Notes purchased
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)     0000001242

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

FOR COURT USE ONLY

DEC - 8 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: Nov. 2?, 2008   Dennis Drebsky

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*emmy* ATTORNEY IN FACT

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

In Re. Lehman Bros. Holdings, Inc. et al
Chapter 11 08-13555 (JMP)

## ATTACHMENT TO PROOF OF CLAIM
## OF COUNTY OF SAN MATEO

1.    On September 15, 2008 Lehman Brothers Holdings Inc. (the "Debtor") filed a
voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.
§§ 101 *et seq.* (the "Bankruptcy Code").

2.    As of the Petition Date, the Debtor was, and still is, indebted and/or liable to the
County of San Mateo ("Claimant"), for no less than $155,000,000 principal amount plus
interest and expenses on account purchases of debt securities ("Notes") of Debtor more
particularly described below and in attachments.

3.    The principal documents supporting Claimant's claim are as follows:

  (1)    Summary of purchases

  (2)    Confirmations of purchases of Notes

4.    Claimant has filed this Proof of claim under compulsion of the bar date to be
established in this chapter 11 case and to protect Claimant from forfeiture of its claim against
the Debtor by reason of any such bar date. Claimant has filed this Proof of Claim only with
respect to liquidated claims arising out of the transactions and matters described herein.
Claimant and/or its affiliates may file additional proofs of claims against the Debtor, and/or
one or more other debtors, with respect to claims arising out of fraud or similar actionable
misconduct, as facts develop, as well as other transactions or matters. In addition, Claimant
may file proofs of claims against one or more other debtors who has guaranteed, or are
otherwise obligated with respect to the claims covered hereby. Claimant reserves the right to

1122043~ 1

- 2 -

amend and/or supplement this Proof of Claim at any time, including after any bar date, in any manner, including for purposes of fixing the amount of the claim described above together with interest, fees and expenses due Claimant, and/or to the additional proofs of claim for any additional claim which may be based on the same or additional documents or grounds of liability.

5.      The filing of this Proof of Claim is not and shall not be deemed or construed as (a) a waiver or release of Claimant's rights against any person, entity, or property, or a waiver of the right to compel the Debtor to return property of Claimant currently in the possession of the Debtor; (b) a consent by Claimant to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a waiver or release of Claimant's rights to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute of the United States Constitution; (d) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (c) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be subject matter

- 3 -

of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant; or (g) an election of remedies.

6. All notices regarding this Proof of Claim should be sent to Dennis J. Drebsky, Esq., Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022, Tel No. (212) 940-3091, E-mail ddrebsky@nixonpeabody.com and Michael P. Murphy, County Counsel, County of San Mateo, 400 County Center, Redwood City, CA 94063-1662 Tel: (650) 363-4250, Fax: (650) 363-4034.

# FLOATERS & CB

9/22/2008

| # | Settlement Date | Reset Date | MATURITY | | FLOATING RATE SECURITIES | PAR AMOUNT | Coupon | CUSIP # | INV#'S |
|---|---|---|---|---|---|---|---|---|---|
| 0 | | | | | | | | | |
| 1 | 10/25/04 | 11/10/08 | 11/10/09 | QL+25 bp | Lehman Bros. Hldg | 10,000,000.00 | 3.0525 | 52517PXU0 | 15802 |
| 2 | 10/24/05 | 10/22/08 | 10/22/08 | QL+9 bp | Lehman Bros. Hldg | 10,000,000.00 | 2.88063 | 52517PC58 | 16994 |
| 3 | 08/21/06 | 11/21/08 | 08/21/09 | QL+10 bp | Lehman Bros. Hldg | 25,000,000.00 | 2.29125 | 52517PK83 | 18518 |
| 4 | 11/16/06 | 11/17/08 | 11/16/09 | QL+10 bp | Lehman Bros. Hldg | 20,000,000.00 | 2.90688 | 52517PN98 | 18792 |
| 5 | 12/21/06 | 09/23/08 | 12/23/08 | QL+5 bp | Lehman Bros. Hldg | 20,000,000.00 | 2.85125 | 52517PQ46 | 18924 |
| 6 | 03/23/07 | 09/23/08 | 03/23/09 | QL+7 bp | Lehman Bros. Hldg | 20,000,000.00 | 2.87125 | 52517PW31 | 19588 |
| 7 | 05/25/07 | 11/25/08 | 05/25/10 | QL+14 bp | Lehman Bros. Hldg | 25,000,000.00 | 2.95063 | 52517P2K6 | 20104 |
| 8 | 01/22/08 | CB | 01/24/13 | 5 5/8 FIXED | Lehman Bros. Hldg-CB | 15,000,000.00 | 5.625 | 5252M0BZ9 | 21714 |
| 9 | 02/15/08 | 11/21/08 | 08/21/09 | QL+10 bp | Lehman Bros. Hldg | 10,000,000.00 | 2.29125 | 52517PK83 | 21969 |
| | | | | | | 155,000,000.00 | | | |

## PURCHASE OF INVESTMENT # 21969

1                                                          Corp **BXT**
Screen was sent via <MESSAGE> Function.
2/15/2008 09:03    **TRADE TICKET : FRN'S**  AS OF: 2/15/08
                                                      ISIN US52517PK833
**TRADER**   ████████████████                         **52517PK83**
   At    ████████████████                     DATED    8/21/06
**BUY**   **10000**    ▓ OF   **LEH Float 08/21/09**
████████  ████  ████████  ████  ✳  **LEHMAN BROS HLDG✳**
PRICE   **97.24000000**          **CURRENT COUPON 5.08188**
  OR
DISCOUNT MARGIN █ **199.587700**    (W Worst   **8/21/09**  @  **100.0000**)
✳ASSUMED INDEX **3.07000**              INDEX AT NEXT PAY   **3.1904**
PREVIOUS COUPON  11/21/2007    NEXT COUPON 2/21/2008    NEXT FIX   2/21/2008
**SETTLEMENT** ON  **2/19/08**          ACCRUED FACTOR   0.01270470
                           Moody's: A1 S&P: A+ FI: AA- DBRS: AAL Comp: A+
                  VIEW AMOUNTS IN CURRENCY: **USD@** █ **1.00000**(US/US) INVERT? █
**NOTES :** Lehman
████████████████████████████████████████████████████
████████████████████████ (52517PK8 Corp DES<GO>)
         **TRADE NUMBERS.**        highlights?(Y/N) **N**

**PRINCIPAL**          $          9,724,000.00
**ACCRUED** ( 90 DAYS )                127,047.00
**TOTAL**              $          9,851,047.00

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2008 Bloomberg Finance L.P.
                                                              G404-947-0 15-Feb-2008 09:03:49

Page                                                    P198 Corp   **DES**

LEHMAN BROS HLDG LEH Float 08/09     100.028/100.028              TRAC
**Floating  Rate  Index  History**                 Page  2/ 3
Benchmark      US LIBORQUARTL   Next Coupon Date   11/21/06  Float Page  1/ 2
Bench Freq     QUARTLY          Prev Coupon Date    8/21/06  Margin +10
Fix Frequency  QUARTLY          Cap        Floor            Cur Cpn 5.4925
Paying Agent                         Mod Bus Day-Adj          Lockout


        Accrual Start    Rate     Accrual Start    Rate
           11/21/06
            8/21/06    5.49250


 to return to main DES page.    to see graph of rates

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
G659-347-1 18-Aug-06 11:13:21

DES                                             P198 Corp   **DES**

# SECURITY DESCRIPTION                 Page 1/ 3
LEHMAN BROS HLDG LEH Float 08/09    100.028/100.028         TRAC

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | Common    026526604 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN    US52517PK833 | 3) ALLQ |
| Market of Issue US Domestic | CUSIP    52517PK83 | 4) TRACE Trade Recap |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US    Currency USD | Moody's    A1e | 6) Cds Spreads/RED Info |
| Collateral Type Notes | S&P    A+ | 7) Ratings |
| Calc Typ( 21)FLOAT RATE NOTE | Fitch    A+ | 8) Custom Notes |
| Maturity  8/21/2009 Series | Composite  A+ | 9) Identifiers |
| NORMAL | ISSUE SIZE | 10) Fees/Restrictions |
| Coupon5.4925   Floating QUARTLY | Amt Issued/Outstanding | 11) Prospectus |
| QUARTL US LIB+10    ACT/360 | USD    850,000.00 (M)/ | 12) Sec. Specific News |
| Announcement Dt  8/14/06 | USD    850,000.00 (M) | 13) Involved Parties |
| Int. Accrual Dt  8/21/06 | Min Piece/Increment | 14) Issuer Information |
| 1st Settle Date  8/21/06 | 1,000.00/  1,000.00 | 15) Pricing Sources |
| 1st Coupon Date 11/21/06 | Par Amount   1,000.00 | 16) Related Securities |
| Iss Pr  100.0000 | BOOK RUNNER/EXCHANGE | 17) Issuer Web Page |
|  | LEH-sole | 65) Old DES |
| HAVE PROSPECTUS    DTC | TRACE | 66)  Send as Attachment |

ADD'L US$100MM ISS'D 8/15/06. ISS'D UNDER MTN PROG. SERIES I.

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
G659-347-1 10-Aug-06 11:13:21

## PURCHASE OF INVESTMENT # 21714

BXT                                                          Corp **BXT**
Enter <1><GO> to send screen via <MESSAGE> System.
1/16/2008 08:34              **TRADE  TICKET**          AS OF: 1/16/08
                                                       ISIN  US5252MOBZ91
                                                       **5252MØBZ9**
**TRADER**  CHARLES LOVSTEIN                            DATED    1/22/08
    At    SAN MATEO COUNTY TREASURER
**BUY**   15000   [M] OF **LEH  5 $\frac{5}{8}$  01/24/13**
                      ** LEHMAN  BROS  HLDG **
**PRICE**  99.54400000   **YIELD  5.730978** to Worst   1/24/13  100.

**SETTLEMENT  ON  1/22/08**
Ratings: Moody's: A1e S&P: A+e FI: AA-e Comp: NR
**SEDOL  B2NQKQ4**
**NOTES :** lehman

                                          {5252MOBZ Corp DES<GO>}
VIEW AMOUNTS IN USD @    1.000000000(US /US ) INVERT?   Highlights off? N
                        **TRADE  NUMBERS**

**PRINCIPAL**         $        14,931,600.00
**ACCRUED** ( 0 DAYS )                  0.00
**TOTAL**             $        14,931,600.00

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900     Singapore 65 6212 1000     U.S. 1 212 318 2000     Copyright 2008 Bloomberg Finance L.P.
                                                                    G404-947-1 16-Jan-2008 08:34:37

**Bloomberg**
TERMINAL

DES                                                         Corp **DES**

**SECURITY DESCRIPTION**                     Page 1/1

LEHMAN BROS HLDG LEH5 ⅝ 01/24/13        N O T   P R I C E D

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | CUSIP        5252M0BZ9 | 2) ALLQ |
| Type Finance-Invest Bnkr/Brkr | ISIN    US5252M0BZ91 | 3) TRACE Trade Recap |
| Market of Issue Domestic MTN | B6 Number    EH1671302 | 4) Corporate Actions |
| SECURITY INFORMATION | RATINGS | 5) Cds Spreads/RED Info |
| Country US      Currency USD | Moody's      A1e | 6) Ratings |
| Collateral Type Sr Unsecured | S&P        A+e | 7) Custom Notes |
| Calc Typ(  1)STREET CONVENTION | Fitch      AA-e | 8) Identifiers |
| Maturity   1/24/2013 Series MTN | Composite  NR | 9) Involved Parties |
| NORMAL | ISSUE SIZE | 10) Issuer Information |
| Coupon      5 ⅝    Fixed | Amt Issued/Outstanding | 11) Pricing Sources |
| S/A        30/360 | USD  4,000,000.00 (M)/ | 12) MTN Drawdown |
| Announcement Dt  1/15/08 | USD  4,000,000.00 (M) | 13) Related Securities |
| Int. Accrual Dt  1/22/08 | Min Piece/Increment | 14) Issuer Web Page |
| 1st Settle Date  1/22/08 |   1,000.00/  1,000.00 | |
| 1st Coupon Date  7/24/08 | Par Amount   1,000.00 | |
| Iss Pr  99.54400 | BOOK RUNNER/EXCHANGE | |
| SPR @ ISS 275.00 vs T 3 ⅝  12/12 | LEH | 65) Old DES |
| NO PROSPECTUS      DTC | TRACE | 66)  Send as Attachment |

ISS'D UNDER MTN PROGRAM.

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2008 Bloomberg Finance L.P.
G404-947-1 16-Jan-2008 08:33:40

**Bloomberg**
TERMINAL

## PURCHASE OF INVESTMENT #  20104

```
1                                              PO65 Corp   BXT
Screen was sent via <MESSAGE> Function.
 5/23/2007 09:23   TRADE TICKET : FRN'S   AS OF: ██████
                                              ISIN US52517P2K60
 ┌─────────────────────────────────────────┐  52517P2K6
 │ TRADER  ███  █ █  ███                     │  DATED   5/25/07
 │    At   ██████████ ██████ ██              │
 │ BUY  ███    █ OF  LEH Float 05/25/10      │
 • SETTLEMENT > NEXT RESET: RESET DATES & DIVIDEND RATE/CPN PROJECTED FORWARD •
 PRICE  ██████████         CURRENT COUPON ██████
    OR
 DISCOUNT MARGIN  ███  ███     (█ Worst   ████ ██ @  ████████)
 •ASSUMED INDEX  ██████            INDEX AT NEXT PAY    ████ █•
 `REVIOUS COUPON   5/25/2007   NEXT COUPON 8/27/2007   NEXT FIX   8/27/2007
 SETTLEMENT ON  ██████           ACCRUED FACTOR   0.00000000
 ██████████       Ratings: Moody's: A1e S&P: A+e FI: A+e Comp: NR
             VIEW AMOUNTS IN CURRENCY: ███ █  █████(US/US) INVERT? █
 NOTES: ██████      ██    ██     ██
        ████████████████████████████████████████████████
                           ████████████ ██████ █ ███ ██
 ┌─────────────────────────────────────────────────────────────┐
 │              TRADE NUMBERS        highlights?(Y/N) █          │
 │ PRINCIPAL        $       25,000,000.00                        │
 │ ACCRUED ( 0 DAYS )                        0.00                │
 │ TOTAL            $       25,000,000.00                        │
 └─────────────────────────────────────────────────────────────┘
Australia 61 2 9777 8600      Brazil 5511 3048 4500     Europe 44 20 7330 7500     Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
                                                          G404-947-0 23-May-2007 09:24:32
```

**Bloomberg**
TERMINAL

Backpage                                            P065 Corp   **DES**

**SECURITY  DESCRIPTION**                    Page 1/ 3
LEHMAN BROS HLDG LEH Float 05/10        N O T   P R I C E D

| ISSUER INFORMATION · | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | CUSIP        52517P2K6 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN    US52517P2K60 | 3) ALLQ |
| Market of Issue Domestic MTN | BB Number    EG4737268 | 4) TRACE Trade Recap |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US      Currency USD | Moody's      A1e | 6) Cds Spreads/RED Info |
| Collateral Type Senior Notes | S&P          A+e | 7) Ratings |
| Calc Typ( 21)FLOAT RATE NOTE | Fitch        A+e | 8) Custom Notes |
| 'aturity  5/25/2010 Series MTN | Composite    NR | 9) Identifiers |
| NORMAL | ISSUE SIZE | 10) Involved Parties |
| Coupon       Floating QUARTLY | Amt Issued/Outstanding | 11) Issuer Information |
| QUARTL US LIB+14     ACT/360 | USD   2,750,000.00 (M)/ | 12) Pricing Sources |
| Announcement Dt  5/22/07 | USD   2,750,000.00 (M) | 13) MTN Drawdown |
| Int. Accrual Dt  5/25/07 | Min Piece/Increment | 14) Related Securities |
| 1st Settle Date  5/25/07 | 1,000.00/  1,000.00 | 15) Issuer Web Page |
| 1st Coupon Date  8/27/07 | Par Amount   1,000.00 | |
| Iss Pr  100.0000 | BOOK RUNNER/EXCHANGE | |
| | LEH | 65) Old DES |
| NO PROSPECTUS     DTC | TRACE | 66)  Send as Attachment |

ISS'D UNDER MTN PROGRAM.

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
G404-547-0 23-May-2007 09:23:39

**Bloomberg**
TERMINAL

## PURCHASE OF INVESTMENT # 19586

1                                                    P233 Corp   **BXT**
Screen was sent via <MESSAGE> Function.
3/21/2007 08:44   **TRADE TICKET** : **FRN'S**   AS OF: 1/20/07
                                                  ISIN US52517PW317
TRADER   CHARLES TOYSHIN                          **52517PW31**
   At    SAN MATEO COUNTY TREASURER               DATED    3/23/07
**BUY**   20000   OF  **LEH Float 03/23/09**
* SETTLEMENT > NEXT RESET: RESET DATES & DIVIDEND RATE/CPN PROJECTED FORWARD *
PRICE   100.0000000   **CURRENT COUPON 5.42000**
   OR
DISCOUNT MARGIN   7.0130   (W Worst   3/23/09 @ 100.0000)
*ASSUMED INDEX  5.35000          INDEX AT NEXT PAY   5.3497*
PREVIOUS COUPON   3/23/2007.   NEXT COUPON 6/25/2007   NEXT FIX   6/25/2007
**SETTLEMENT** ON  3/23/07         ACCRUED FACTOR   0.00000000
         Ratings: Moody's: A1e S&P: A+ FI: A+ Comp: NR
         VIEW AMOUNTS IN CURRENCY: USD@  1.00000(US/US) INVERT? @
NOTES :

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 92041v

**Bloomberg**
TERMINAL

DES                                              P233 Corp   **DES**

# SECURITY DESCRIPTION                Page 1/ 3
LEHMAN BROS HLDG LEH Float 03/09       N O T   P R I C E D

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | CUSIP     52517PW31 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN   US52517PW317 | 3) ALLQ |
| Market of Issue Domestic MTN | BB Number   EG2951994 | 4) TRACE Trade Recap |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US      Currency USD | Moody's      A1e | 6) Cds Spreads/RED Info |
| Collateral Type Senior Notes | S&P          A+ | 7) Ratings |
| Calc Typ(  21)FLOAT RATE NOTE | Fitch        A+ | 8) Custom Notes |
| Maturity   3/23/2009 Series MTN1 | Composite  A+ | 9) Identifiers |
| NORMAL | ISSUE SIZE | 10) Involved Parties |
| Coupon       Floating QUARTLY | Amt Issued/Outstanding | 11) Issuer Information |
| QRTLY  LIBOR +7      ACT/360 | USD  1,600,000.00 (M)/ | 12) Pricing Sources |
| Announcement Dt  3/20/07 | USD  1,600,000.00 (M) | 13) MTN Drawdown |
| Int. Accrual Dt  3/23/07 | Min Piece/Increment | 14) Related Securities |
| 1st Settle Date  3/23/07 |    1,000.00/  1,000.00 | 15) Issuer Web Page |
| 1st Coupon Date  6/25/07 | Par Amount   1,000.00 | |
| Iss Pr | BOOK RUNNER/EXCHANGE | |
| | LEH | 65) Old DES |
| NO PROSPECTUS      DTC | TRACE | 66)  Send as Attachment |

ISS'D UNDER MTN PROG.

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
G659-347-1 21-Mar-2007 08:39:49

**Bloomberg**
TERMINAL

Page                                                    P233 Corp   **DES**

LEHMAN BROS HLDG LEH Float 03/09        N O T   P R I C E D
**Floating  Rate  Index  History**            Page   2/ 3
| Benchmark | LIBOR | QRTLY | Next Coupon Date | 6/25/07 | Float Page | 1/ 2 |
| Bench Freq | QUARTLY | | Prev Coupon Date | 3/23/07 | Margin +7 | |
| Fix Frequency | QUARTLY | | Cap | Floor | Cur Cpn | |
| Paying Agent | | | Mod-Adj | | Lockout | |

| Accrual Start | Rate | Accrual Start | Rate |
|---|---|---|---|
| 6/25/07 | | | |
| 3/23/07 | | | |

MENU to return to main DES page.    GFWD to see graph of rates

Australia 61 2 9777 8600     Brazil 5511 3048 4500     Europe 44 20 7330 7500     Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2007 Bloomberg L.P.
G659-342-1 21-Mar-2007 08:40:21

**Bloomberg**
TERMINAL

## PURCHASE OF INVESTMENT # 18924

1                                                       N117 Corp   **BXT**
Screen was sent via <MESSAGE> Function.
12/19/2006 08:40   **TRADE TICKET** : **FRN'S**   AS OF: 12/18/06
                                                    ISIN US52517PQ46?
| TRADER | CHARLES TOVSTEIN | 52517PQ46 |
|---|---|---|
| At | SAN MATEO COUNTY TREASURER | DATED   12/21/06 |

**BUY**   20000   M OF   **LEH Float 12/23/08**
* SETTLEMENT > NEXT RESET: RESET DATES & DIVIDEND RATE/CPN PROJECTED FORWARD *
PRICE   100.0000000        **CURRENT COUPON  5.41500**
   OR
DISCOUNT MARGIN   5.0000      (W) Worst   12/23/08 @ 100.0000)
*ASSUMED INDEX  5.36500          INDEX AT NEXT PAY   5.3650*
PREVIOUS COUPON  12/21/2006   NEXT COUPON  3/23/2007   NEXT FIX   3/23/2007
**SETTLEMENT** ON   12/21/06        ACCRUED FACTOR   0.00000000
                    Ratings: Moody's: A1e S&P: A+ FI: A+ Comp: A+
           / VIEW AMOUNTS IN CURRENCY: USD3   1.00000(US/US) INVERT?
NOTES: Lehman

                                    (52517PQ4 Corp DES<GO>)
              **TRADE NUMBERS**       Highlight

PRINCIPAL         $        20,000,000.00
ACCRUED                             0.00
TOTAL             $        20,000,000.00

Australia 61 2 9777 8600      Brazil 5511 3048 4500
Hong Kong 852 2977 6000  Japan 81 3 3201 8900 Singapore 65 6212 1000

**Bloomberg**

DES                                              N117 Corp   **DES**

# SECURITY DESCRIPTION        Page· 1/ 3
LEHMAN BROS HLDG LEH Float 12/08       N O T   P R I C E D

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | CUSIP      52517PQ46 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN    US52517PQ467 | 3) ALLQ |
| Market of Issue Domestic MTN | BB Number    EG0574434 | 4) TRACE Trade Recap |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US      Currency USD | Moody's      A1e | 6) Cds Spreads/RED Info |
| Collateral Type Notes | S&P        A+ | 7) Ratings |
| Calc Typ( 21)FLOAT RATE NOTE | Fitch      A+ | 8) Custom Notes |
| Maturity  12/23/2008 Series MTn | Composite  A+ | 9) Identifiers |
| NORMAL | ISSUE SIZE· | 10) Involved Parties |
| Coupon        Floating QUARTLY | Amt Issued/Outstanding | 11) Issuer Information |
| QUARTL US LIB+5     ACT/360 | USD  1,000,000.00 (M)/ | 12) Pricing Sources |
| Announcement Dt 12/18/06 | USD  1,000,000.00 (M) | 13) MTN Drawdown |
| Int. Accrual Dt 12/21/06 | Min Piece/Increment | 14) Related Securities |
| 1st Settle Date 12/21/06 |   1,000.00/  1,000.00 | 15) Issuer Web Page |
| 1st Coupon Date  3/23/07 | Par Amount  1,000.00 | |
| Iss Pr  100.0000 | BOOK RUNNER/EXCHANGE | |
| | LEH | 65) Old DES |
| NO PROSPECTUS     DTC | TRACE | 66)  Send as Attachment |

ISS'D UNDER MTN PROG. SERIES I. LONG 1ST CPN.

Australia 61 2 9777 8600      Brazil 3511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
G931-347-1 19-Dec-2006 08:40:24

**Bloomberg**
TERMINAL

# LEHMAN BROTHERS

## Lehman Brothers Holdings Inc.

### 3M LIBOR Floating Rate Notes due December 23, 2008

| | |
|---|---|
| **Issuer:** | Lehman Brothers Holdings Inc. |
| **Ratings:** | A1/A+/A+ |
| **Principal Amount:** | $1,000,000,000.00 |
| **Security Type:** | Senior  Medium Term Notes |
| **Legal Format:** | SEC Registered |
| **Issue Price:** | 100% of principal amount |
| **Settlement Date:** | December 21, 2006 |
| **Maturity Date:** | December 23, 2008 |
| **Coupon:** | 3-month LIBOR (Telerate Page 3750) plus 0.05% |
| **Interest Payment Dates:** | Quarterly on the 23rd of each December, March, June and September, commencing on March 23, 2007 |
| **Interest Determination Dates:** | Two London banking days prior to the first day of the relevant interest period |
| **Day Count** | Actual/360 |
| **Business Day Convention:** | Modified Following, Adjusted |
| **CUSIP:** | 52517PQ46 |
| **Denominations:** | $1,000 |
| **Underwriters:** | Lehman Brothers 98% (bookrunner) |
| | Hypo Capital Markets, Inc (1%) |
| | Daiwa Securities SMBC Europe Limited (1%) |

The issuer has filed a registration statement (including a prospectus) with the U.S. Securities and Exchange Commission (SEC) for this offering. Before you invest, you should read the prospectus for this offering in that registration statement, and other documents the issuer has filed with the SEC for more complete information about the issuer and this offering. You may get these documents for free by searching the SEC online database (EDGAR®) at *www.sec.gov*. Alternatively, you may obtain a copy of the prospectus from Lehman Brothers Inc. by calling 1-888-603-5847.

## PURCHASE OF INVESTMENT # 18792

1                                                      P216 Corp   BXT
Screen was sent via <MESSAGE> Function.
11/10/2006 09:26   TRADE  TICKET  :  FRN'S   AS OF: 11/10/06
                                                     ISIN  US52517PN985
TRADER  CHARLES TOVSTEIN                              52517PN98
   At  SAN MATEO COUNTY TREASURER              DATED   11/16/06
BUY    20000       OF  LEH Float  11/16/09
 * SETTLEMENT > NEXT RESET: RESET DATES & DIVIDEND RATE/CPN PROJECTED FORWARD *
PRICE     100.0000000              CURRENT COUPON 5.47438
   OR
DISCOUNT MARGIN   9.9966      (W Worst  11/16/09 @  100.0000)
*ASSUMED INDEX  5.37430               INDEX AT NEXT PAY    5.3740*
PREVIOUS COUPON  11/16/2006   NEXT COUPON 2/16/2007   NEXT FIX  2/16/2007
SETTLEMENT ON  11/16/06              ACCRUED FACTOR   0.00000000
                         Ratings: Moody's: A1e S&P: A+ FI: A+ Comp: A+
                  VIEW AMOUNTS IN CURRENCY: USD@   1.00000(US/US) INVERT?
NOTES: Lehman

                                (52517PN9 Corp DES<GO>)
                  TRADE  NUMBERS        highlights?(Y/N) N

PRINCIPAL        $           20,000,000.00
ACCRUED ( 0 DAYS )                        0.00
TOTAL            $           20,000,000.00

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
                                                              10-Nov-2006 09:27:28

DES                                                    P216 Corp   **DES**

**SECURITY DESCRIPTION**                    Page 1/ 3
LEHMAN BROS HLDG LEH Float 11/09      N O T   P R I C E D

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | CUSIP        52517PN98 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN     US52517PN985 | 3) ALLQ |
| Market of Issue Domestic MTN | BB Number    EF8398283 | 4) TRACE Trade Recap. |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US      Currency USD | Moody's      A1e | 6) Cds Spreads/RED Info |
| Collateral Type Senior Notes | S&P        A+ | 7) Ratings |
| Calc Typ( 21)FLOAT RATE NOTE | Fitch      A+ | 8) Custom Notes |
| Maturity  11/16/2009 Series MTn | Composite  A+ | 9) Identifiers |
| NORMAL | ISSUE SIZE | 10) Involved Parties |
| Coupon          Floating QUARTLY | Amt Issued/Outstanding | 11) Issuer Information |
| QUARTL US LIB+10     ACT/360 | USD   1,350,000.00 (M)/ | 12) Pricing Sources |
| Announcement Dt 11/ 9/06 | USD   1,350,000.00 (M) | 13) MTN Drawdown |
| Int. Accrual Dt 11/16/06 | Min Piece/Increment | 14) Related Securities |
| 1st Settle Date 11/16/06 | 1,000.00/  1,000.00 | 15) Issuer Web Page |
| 1st Coupon Date  2/16/07 | Par Amount   1,000.00 | |
| Iss Pr 100.0000 | BOOK RUNNER/EXCHANGE | |
| | LEH | 65) Old DES |
| NO PROSPECTUS     DTC | TRACE | 66)  Send as Attachment |

ISS'D UNDER MTN PROG.

Australia 61 2 9777 8600     Brazil 5511 3048 4500     Europe 44 20 7330 7500     Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
10-Nov-2006 09:26:32

Page                                              P216 Corp   **DES**

LEHMAN BROS.HLDG LEH Float 11/09      N O T   P R I C E D
**Floating Rate Index History**              Page  2/ 3
| | | | | |
|---|---|---|---|---|
| Benchmark | US LIBORQUARTL | Next Coupon Date | 2/16/07 | Float Page  1/ 2 |
| Bench Freq | QUARTLY | Prev Coupon Date | 11/16/06 | Margin  +10 |
| Fix Frequency | QUARTLY | Cap | Floor | Cur Cpn |
| Paying Agent | | Mod Bus Day-Adj | | Lockout |

     Accrual Start   Rate     Accrual Start    Rate
        2/16/07
       11/16/06

to return to main DES page.      to see graph of rates

## PURCHASE OF INVESTMENT #  18518

BXT                                                           P198 Corp   BXT
Enter <1><GO> to send screen via <MESSAGE> System.
8/18/2006 11:13    TRADE  TICKET  :  FRN'S   AS OF: 8/14/06
                                                           ISIN  US52517PK833
TRADER  CHARLES TOVSTEIN                                    52517PK83
        At  SAN MATEO COUNTY TREASURER                     DATED    8/21/06
BUY      25000       M OF  LEH Float 08/21/09
MIN PIECE=  1000  INCREMENT=  1000  *  LEHMAN  BROS  HLDG*
PRICE       100.0000000            CURRENT  COUPON  5.49250
   OR
DISCOUNT MARGIN    9.9250       (W Worst  8/21/09  @  100.0000)
ASSUMED INDEX  5.39930                  INDEX AT NEXT PAY    5.4000*
PREVIOUS COUPON    8/21/2006    NEXT COUPON 11/21/2006    NEXT FIX  11/21/2006
SETTLEMENT ON  8/21/06                  ACCRUED FACTOR   0.00000000
                          Ratings: Moody's: A1e S&P: A+ FI: A+ Comp: A+
                VIEW AMOUNTS IN CURRENCY: USD@  1.00000(US/US) INVERT?
NOTES: Lehman

                                        (52517PKB Corp DES<GO>)
                   TRADE  NUMBERS         highlights?(Y/N) N

PRINCIPAL        $         25,000,000.00
ACCRUED ( 0 DAYS )                   0.00
TOTAL            $         25,000,000.00

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
                                                                    G659-347-0 18-Aug-06 11:14:59

DES                                                      P198 Corp   DES

# SECURITY DESCRIPTION                    Page 1/ 3

LEHMAN BROS HLDG LEH Float 08/09        100.028/100.028

TRAC

| ISSUER INFORMATION | IDENTIFIERS | 1) Additional Sec Info |
|---|---|---|
| Name LEHMAN BROTHERS HOLDINGS | Common    026526604 | 2) Floating Rates |
| Type Finance-Invest Bnkr/Brkr | ISIN    US52517PK833 | 3) ALLQ |
| Market of Issue US Domestic | CUSIP      52517PK83 | 4) TRACE Trade Recap |
| SECURITY INFORMATION | RATINGS | 5) Corporate Actions |
| Country US     Currency USD | Moody's      A1e | 6) Cds Spreads/RED Info |
| Collateral Type Notes | S&P          A+ | 7) Ratings |
| Calc Typ(   21)FLOAT RATE NOTE | Fitch        A+ | 8) Custom Notes |
| Maturity   8/21/2009 Series | Composite   A+ | 9) Identifiers |
| NORMAL | ISSUE SIZE | 10) Fees/Restrictions |
| Coupon5.4925   Floating QUARTLY | Amt Issued/Outstanding | 11) Prospectus |
| QUARTL US LIB+10     ACT/360 | USD    850,000.00 (M)/ | 12) Sec. Specific News |
| Announcement Dt   8/14/06 | USD    850,000.00 (M) | 13) Involved Parties |
| Int. Accrual Dt   8/21/06 | Min Piece/Increment | 14) Issuer Information |
| 1st Settle Date   8/21/06 | 1,000.00/  1,000.00 | 15) Pricing Sources |
| 1st Coupon Date 11/21/06 | Par Amount   1,000.00 | 16) Related Securities |
| Iss Pr  100.0000 | BOOK RUNNER/EXCHANGE | 17) Issuer Web Page |
|  | LEH-sole | 65) Old DES |
| HAVE PROSPECTUS    DTC | TRACE | 66)   Send as Attachment |

ADD'L US$100MM ISS'D 8/15/06. ISS'D UNDER MTN PROG. SERIES I.

Australia 61 2 9777 8600    Brazil 5311 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2006 Bloomberg L.P.
G659-347-1 18-Aug-06 11:13:21

Page                                                P198 Corp   **DES**

LEHMAN BROS HLDG LEH Float 08/09     100.028/100.028               TRAC

**Floating Rate Index History**          Page  2/ 3

| | | | | |
|---|---|---|---|---|
| Benchmark | US LIBORQUARTL | Next Coupon Date | 11/21/06 | Float Page  1/ 2 |
| Bench Freq | QUARTLY | Prev Coupon Date | 8/21/06 | Margin +10 |
| Fix Frequency | QUARTLY | Cap        Floor | | Cur Cpn 5.4925 |
| Paying Agent | | Mod Bus Day-Adj | | Lockout |

| Accrual Start | Rate | Accrual Start | Rate |
|---|---|---|---|
| 11/21/06 | | | |
| 8/21/06 | 5.49250 | | |

[▒] to return to main DES page.     [▒] to see graph of rates

## PURCHASE OF INVESTMENT #16994

BXT                                                          N242 Corp   B X T

Enter <1><GO> to send screen via <MESSAGE> System.
10/20/2005 12:28    T R A D E    T I C K E T   :   F R N ' S    AS OF: 10/19/05
                                                             ISIN  US52517PC582
T R A D E R    CHARLES TOVSTEIN                              5 2 5 1 7 P C 5 8
        At    SAN MATEO COUNTY TREASURER                     DATED    10/24/05
B U Y      10000      M OF    L E H    F l o a t    1 0 / 2 2 / 0 8
*SETTLEMENT > INDEX PRESET* RESET DATES & DIVIDEND RATE/CPN PROJECTED FORWARD *
PRICE      100.0000000           C U R R E N T    C O U P O N   4 . 2 8 3 7 0
   O R
DISCOUNT MARGIN     8.9980        (W  Worst    10/22/08 @  100.0000)
*ASSUMED INDEX  4.19370                       INDEX AT NEXT PAY      4.1937*
PREVIOUS COUPON ·10/24/2005    NEXT COUPON  1/23/2006    NEXT FIX   1/23/2006
S E T T L E M E N T  ON  10/24/05              ACCRUED FACTOR  0.00000000
                    Ratings: Moody's: A1e S&P: A+ FI: A+ Comp: A+
                    VIEW AMOUNTS IN CURRENCY: USD®  __1.00000_(US/US) INVERT? _
N O T E S : Lehman

                                         {52517PC5 Corp DES<GO>}
                      T R A D E    N U M B E R S          highlights?(Y/N) N

P R I N C I P A L          $                   1 0 , 0 0 0 , 0 0 0 . 0 0
A C C R U E D  (  0 DAYS )                                    0 . 0 0
T O T A L                  $                   1 0 , 0 0 0 , 0 0 0 . 0 0

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                             G931-347-0 20-Oct-05 12:29:16

DES                                                              P198 Corp   D E S

```
S T R U C T U R E D   N O T E   D E S C R I P T I O N   o Calculations
LEHMAN BROS HLDG LEH Var 12/15-06    99.250/99.250    (0.00/0.00) TRAC
 ISSUER INFORMATION              IDENTIFIERS            1) Additional Sec Info
 Name LEHMAN BROTHERS HOLDINGS   Common    023755025    2) Floating Rates
 Type Finance-Invest Bnkr/Brkr   ISIN    US52517PC822   3) Call Schedule
 Market of Issue Domestic MTN    CUSIP     52517PC82    4) ALLQ
 SECURITY INFORMATION            RATINGS                5) TRACE Trade Recap
 Country US      Currency USD    Moody's    A1          6) Corporate Actions
 Collateral Type Senior Notes    S&P        A+          7) Par Cds Spreads
 Calc Typ( 521)ACCRUED ONLY FLOAT Fitch     A+          8) Ratings
 Maturity  12/14/2015 Series MTNH Composite  A+         9) Custom Notes
 CALLABLE  CALL  3/14/06@ 100.00   ISSUE SIZE          10) Identifiers
 Coupon8 ³      Variable QUARTLY Amt Issued/Outstanding 11) Prospectus
 3MO    N/A   FLAT    30/360       USD    5,000.00 (M)/ 12) Involved Parties
 Announcement Dt 11/15/05          USD    5,000.00 (M)  13) Issuer Information
 Int. Accrual Dt 12/14/05         Min Piece/Increment   14) Pricing Sources
 1st Settle Date 12/14/05          1,000.00/ 1,000.00   15) MTN Drawdown
 1st Coupon Date  3/14/06         Par Amount  1,000.00  16) Related Securities
 Iss Pr  100.0000                 BOOK RUNNER/EXCHANGE  17) Issuer Web Page
                                  LEH                   65) Old DES
 HAVE PROSPECTUS    DTC           TRACE                 66)  Send as Attachment
CPN=8³ {% *  (30YR USD SWAP REF - 2YR USD SWAP REF). MIN CPN =0%. ISS'D UNDER MTN
PROGRAM. SERIES H.
```

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                                                    G659-347-0 28-Dec-05 18:28:32

## PURCHASE OF INVESTMENT #15802

BXT                                                      N208 Corp    B X T
Enter <1><GO> to send screen via <MESSAGE> System.
10/22/2004 16:37    T R A D E    T I C K E T    :    F R N ' S    AS OF: 10/19/04
                                                         ISIN  US52517PXU01
T R A D E R    CHARLES TOVSTEIN                             5 2 5 1 7 P X U 0
          At    SAN MATEO COUNTY TREASURER                DATED    10/25/04
B U Y       10000      M OF   L E H   F l o a t   1 1 / 1 0 / 0 9
MIN PIECE=   1000   INCREMENT=   1000   *   L E H M A N    B R O S    H L D G *
PRICE      99.90380000           C U R R E N T   C O U P O N   2 . 3 5 0 0 0
   O R
DISCOUNT MARGIN    26.7910      (W  Worst    11/10/09 @   100.0000)
*ASSUMED INDEX   2.11000                      INDEX AT NEXT PAY      2.1340*
PREVIOUS COUPON  10/25/2004    NEXT COUPON  2/10/2005    NEXT FIX    2/10/2005
S E T T L E M E N T   ON   10/25/04                   ACCRUED FACTOR  0.00000000
                      Ratings: Moody's: A1 S&P: A Comp: A
                      VIEW AMOUNTS IN CURRENCY: USD@    1.00000 (US/US)  INVERT? _
N O T E S : Lehman

                                        {52517PXU Corp DES<GO>}
                T R A D E    N U M B E R S        highlights?(Y/N) N

P R I N C I P A L          $               9 , 9 9 0 , 3 8 0 . 0 0
A C C R U E D  (  0 DAYS )                             0 . 0 0
T O T A L                  $               9 , 9 9 0 , 3 8 0 . 0 0

Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2004 Bloomberg L.P.
                                                         G931-347-1 22-Oct-04 16:38:35

ᴬS                                                    P226 Corp    D E S

S E C U R I T Y   D E S C R I P T I O N                o Calculations
LEHMAN BROS HLDG LEH Float 11/09        N O T   P R I C E D
 ISSUER INFORMATION                  IDENTIFIERS              1) Additional Sec Info
 Name LEHMAN BROTHERS HOLDINGS       CUSIP        52517PXU0   2) Floating Rates
 Type Finance-Invest Bnkr/Brkr       ISIN    US52517PXU01     3) Identifiers
 Market of Issue US DOMESTIC         BB number    ED6604745   4) Ratings
 SECURITY INFORMATION                RATINGS                  5) Involved Parties
 Country US      Currency USD        Moody's    A1e           6) Custom Notes
 Collateral Type NOTES               S&P        A             7) Issuer Information
 Calc Typ( 198)NO CALC-FLOATERS      Composite  A             8) ALLQ
 Maturity 11/10/2009 Series MTN      ISSUE SIZE               9) Pricing Sources
 NORMAL                              Amt Issued              10) MTN Drawdown
 ⁻upon         FLOATING QUARTLY      USD    500,000.00 (M)   11) Related Securities
 ..TLY LIBOR +25      ACT/360        Amt Outstanding         12) Issuer Web Page
 Announcement Dt 10/18/04            USD    500,000.00 (M)   13) Par Cds Spreads
 Int. Accrual Dt 10/25/04            Min Piece/Increment     14) TRACE Trade Recap
 1st Settle Date 10/25/04              1,000.00/  1,000.00
 1st Coupon Date  2/10/05            Par Amount   1,000.00
 Iss Pr   99.9038                    BOOK RUNNER/EXCHANGE
                                     LEH                     65) Old DES
 NO PROSPECTUS        DTC            TRACE                   66) Send as Attachment



1

2 *City of South San Francisco v. Citigroup Global Markets Inc., et al.*
  USDC – Northern District Case No. CV 09-0501 MEJ

3

4

5

6

7

8

9

10
                          **NOTICE OF REMOVAL**
11

12

13              # EXHIBIT B

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF473419

NOTICE OF REMOVAL

# SUMMONS

## *(CITACION JUDICIAL)*

SUM-100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITIGROUP GLOBAL MARKETS, INC., SUNTRUST ROBINSON HUMPHREY, INC., WELLS FARGO
SECURITIES, LLC, MELLON FINANCIAL MARKETS, INC., ERNST & YOUNG LLP, RICHARD S
FULD, JR., CHRISTOPER M. O'MEARA, ERIN CALLAN, MICHAEL L. AINSLIE, JOHN F. AKERS,
ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER
GENT, ROLAND HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, and DOES 1 through 20,

**ENDORSED FILED**
**SAN MATEO COUNTY**

DEC 1 6 2008

Clerk of the Superior Court
By _____ R. LOPEZ
**DEPUTY CLERK**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
CITY OF SOUTH SAN FRANCISCO

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
     There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
     *Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Mateo Superior Court
400 County Center

Redwood City, CA 94063-1655

CASE NUMBER
*(Número del Caso):* **CIV 4 7 9 4 1 2**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bruce L. Simon SBN 96241
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1430
San Francisco, CA 94104

DATE:
*(Fecha)* **DEC 1 6 2008**    **JOHN C. FITTON**    Clerk, by _____ R. LOPEZ , Deputy
*(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*

3. ☒ on behalf of *(specify):* WELLS FARGO SECURITIES, LLC

under   ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

# SUMMONS

*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITIGROUP GLOBAL MARKETS, INC., SUNTRUST ROBINSON HUMPHREY, INC., WELLS FARGO SECURITIES, LLC, MELLON FINANCIAL MARKETS, INC., ERNST & YOUNG LLP, RICHARD S. FULD, JR. CHRISTOPER M. O'MEARA, ERIN CALLAN, MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, ROLAND HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, and DOES 1 through 20.

**ENDORSED FILED**
**SAN MATEO COUNTY**

DEC 16 2008

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF SOUTH SAN FRANCISCO

Clerk of the Superior Court
By _R. Lopez_
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Mateo Superior Court
400 County Center

Redwood City, CA 94063-1655

CASE NUMBER:
*(Número del Caso):* **CIV 4 7 9 4 1 2**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bruce L. Simon SBN 96241
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1430
San Francisco, CA 94104

R. LOPEZ

| DATE: | JOHN C. FITTON | Clerk, by | , Deputy |
|---|---|---|---|
| *(Fecha)* DEC 16 2008 | | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
[SEAL]
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

   MELLON FINANCIAL MARKETS, INC.

3. [X] on behalf of *(specify):*

   under: [X] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
IM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

*H 2009 00014*

*McCarthy*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITIGROUP GLOBAL MARKETS, INC., SUNTRUST ROBINSON HUMPHREY, INC., WELLS FARGO SECURITIES, LLC, MELLON FINANCIAL MARKETS, INC , ERNST & YOUNG LLP, RICHARD S FULD, JR , CHRISTOPHER M. O'MEARA, MICHAEL L. AINSLIE, JOHN F AKERS, ROGER S. BERLIND, THOMAS H CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, ROLAND HERNANDEZ, HENRY KAUFMAN, JOHN D MACOMBER, and DOES 1 through 20,

**ENDORSED FILED**
**SAN MATEO COUNTY**

DEC 16 2008

Clerk of the Superior Court
By R. Lopez
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF SOUTH SAN FRANCISCO

JAN 09 2009

accepted (78)

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Mateo Superior Court
400 County Center

Redwood City, CA 94063-1655

CASE NUMBER:
*(Número del Caso)*
**CIV 479412**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bruce L. Simon SBN 96241
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1430
San Francisco, CA 94104

| DATE: | | |
|---|---|---|
| *(Fecha)* **DEC 16 2008** | **JOHN C. FITTON** Clerk, by **R. LOPEZ** *(Secretario)* | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010))*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*.
3. ☒ on behalf of *(specify)*: CITIGROUP GLOBAL MARKETS, INC.

under: ☒ CCP 416.10 (corporation)
☐ CCP 416.20 (defunct corporation)
☐ CCP 416 40 (association or partnership)
☐ other *(specify)*:

☐ CCP 416.60 (minor)
☐ CCP 416.70 (conservatee)
☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITIGROUP GLOBAL MARKETS, INC., SUNTRUST ROBINSON HUMPHREY, INC., WELLS FARGO
SECURITIES, LLC, MELLON FINANCIAL MARKETS, INC., ERNST & YOUNG LLP, RICHARD S.
FULD, JR., CHRISTOPER M. O'MEARA, ERIN CALLAN, MICHAEL L. AINSLIE, JOHN F. AKERS,
ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER
GENT, ROLAND HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, and DOES 1 through 20,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF SOUTH SAN FRANCISCO

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

DEC 16 2008

Clerk of the Superior Court
By M. Lopez
DEPUTY CLERK

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Mateo Superior Court
400 County Center

Redwood City, CA 94063-1655

CASE NUMBER:
*(Número del Caso):* **CIV 479412**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bruce L. Simon SBN 96241
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1430
San Francisco, CA 94104

DATE: **DEC 16 2008** **JOHN C. FITTON**, Clerk, by **R. LOPEZ**, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
   *SUNTRUST ROBINSON*
3. ☒ on behalf of *(specify):* *HUMPHREY, INC.*

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

1  Bruce L. Simon (Bar No. 96241)
   Esther L. Klisura (Bar No. 221171)
2  Ashlei M. Vargas (Bar No. 250045)
   PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
3  44 Montgomery Street, Suite 1430
   San Francisco, CA 94104
4  Telephone: (415) 433-9000
   Facsimile: (415) 433-9008
5
   Clifford H. Pearson (Bar No. 108523)
6  PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
   15165 Ventura Boulevard, Suite 400
7  Sherman Oaks, CA 91403
   Telephone: (818) 788-8300
8  Facsimile: (818) 788-8104

9  Geoffrey Spellberg (Bar No. 121079)
   MEYERS, NAVE, RIBACK, SILVER & WILSON
10 575 Market Street, Suite 2600
   San Francisco, CA 94105
11 Telephone: (415) 421-3711
   Facsimile: (415) 421-3767
12
   *Counsel for Plaintiff City of South San Francisco*
13

14             SUPERIOR COURT FOR THE STATE OF CALIFORNIA

15                  IN AND FOR THE COUNTY OF SAN MATEO

16

17 CITY OF SOUTH SAN FRANCISCO,         CASE NO.  **CIV 4 7 9 4 1 2**

18              Plaintiff,              **COMPLAINT FOR DAMAGES**

19        vs.

20 CITIGROUP GLOBAL MARKETS, INC.,      1) **Violation of Section 11 of the Securities**
   SUNTRUST ROBINSON HUMPHREY, INC.,       **Act;**
21 WELLS FARGO SECURITIES, LLC,         2) **Violation of Section 15 of the Securities**
   MELLON FINANCIAL MARKETS, INC.,         **Act;**
22 ERNST & YOUNG LLP, RICHARD S. FULD,  3) **Aiding and Abetting Breach of Fiduciary**
   JR., CHRISTOPER M. O'MEARA, ERIN        **Duty;**
23 CALLAN, MICHAEL L. AINSLIE, JOHN F.  4) **Violation of California Corporations**
   AKERS, ROGER S. BERLIND, THOMAS H.      **Code § 25400, *et seq.*;**
24 CRUIKSHANK, MARSHA JOHNSON           5) **Fraud and Deceit; and**
   EVANS, SIR CHRISTOPHER GENT,         6) **Negligent Misrepresentation**
25 ROLAND HERNANDEZ, HENRY
   KAUFMAN, JOHN D. MACOMBER, and
26 DOES 1 through 20,

27              Defendants.             JURY TRIAL DEMANDED

28

   793655 1
                                       1
                          COMPLAINT FOR DAMAGES

**ENDORSED FILED**
**SAN MATEO COUNTY**

DEC 1 6 2008

Clerk of the Superior Court
By _____ R. Lopez
        DEPUTY CLERK

1

# TABLE OF CONTENTS

2

3
                                                                                    Page

4

5
I.      NATURE OF ACTION ...............................................................................................1

6
II.     JURISDICTION AND VENUE ...................................................................................3

7
III.    PARTIES ....................................................................................................................4

8
IV.     FACTUAL ALLEGATIONS .......................................................................................9

9
V.      THE ROLE OF PUBLIC AUDITOR ERNST .........................................................21

10

11
FIRST CAUSE OF ACTION ...............................................................................................28

12
SECOND CAUSE OF ACTION ...........................................................................................29

13
THIRD CAUSE OF ACTION ...............................................................................................30

14
FOURTH CAUSE OF ACTION ...........................................................................................32

15
FIFTH CAUSE OF ACTION ................................................................................................33

16
SIXTH CAUSE OF ACTION ...............................................................................................35

17
PRAYER FOR RELIEF ........................................................................................................36

18
DEMAND FOR JURY TRIAL .............................................................................................36

19

20

21

22

23

24

25

26

27

28

793655 1                                          i

1    Plaintiff City of South San Francisco, by its undersigned attorneys, makes the following

2    allegations on information and belief based upon the investigation of counsel, except as to the

3    allegations pertaining specifically to Plaintiff and Plaintiff's counsel, which are based on personal

4    knowledge. The investigation conducted by Plaintiff's counsel included, but was not limited to, a

5    review and analysis of: (i) public filings, including Lehman Brothers Holdings Inc.'s ("Lehman" or

6    the "Company") filings and prospectuses with the United States Securities and Exchange

7    Commission ("SEC"); (ii) securities analysts' reports and advisories about the Company;

8    (iii) press releases issued by Defendants and others; and (iv) publicly-available news articles and

9    reports.

10                          **I.       NATURE OF ACTION**

11       1.       Plaintiff City of South San Francisco is a public entity that invested monies in an

12    investment pool organized and managed by the County of San Mateo pursuant to California

13    Government Code sections 27130 and 53635, and related statutes. As a participant in the San

14    Mateo County Investment Pool ("SM Pool"), Plaintiff purchased medium term notes issued by

15    Lehman (the "Lehman Notes" or "Notes"). Plaintiff's claims are brought against certain officers

16    and directors of Lehman, as well as the underwriters of various offerings of the Notes made

17    pursuant to registration statements filed with the SEC, for violations of Sections 11 and 15 of the

18    Securities Act of 1933 ("Securities Act") and for violations of California statutes and common law.

19    Plaintiff also brings claims against Lehman's public auditor, Ernst & Young LLP ("Ernst"), for

20    materially false and misleading audit opinions issued by it on Lehman's consolidated financial

21    statements for the fiscal years 2005, 2006, and 2007.

22       2.       This action arises under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k

23    and 77o, which impose liability on a company's directors, officers, underwriters, and accountants,

24    among others, for filing registration statements, prospectuses, and supplements thereto with the

25    SEC that misrepresent material facts or fail to disclose material facts.

26       3.       Plaintiff alleges that certain registration statements filed by Lehman pursuant to the

27    offering of the Lehman Notes contained material misstatements and omissions. The

28    representations made in the registration statements were materially false and misleading because at

793655 1                                     1

1    all times that Plaintiff purchased the Lehman Notes, through its participation in the SM Pool,

2    Lehman was experiencing a number of material adverse events that were not revealed or

3    sufficiently disclosed in the registration statements. Those events include, but are not limited to:

4    (i) the failure to disclose Lehman's continued and aggressive marketing of high risk securities

5    secured with subprime mortgages that had suffered material increases in default rates due to

6    declining home values; (ii) the failure to set aside adequate reserves to cover Lehman's ever

7    increasing portfolio of underperforming subprime mortgage-backed securities and commercial

8    mortgage-backed securities; (iii) the continued marketing of high risk mortgage bonds and

9    Collateralized Debt Obligations ("CDOs") secured by assets that were declining sharply in market

10   value even as the market for such securities collapsed; (iv) the promotion of unsustainable business

11   practices designed to exploit the mortgage lending business despite the material, and mostly

12   undisclosed, risks involved; (v) the insufficient capital levels of Lehman; (vi) the failure to timely

13   and adequately write-down commercial and residential mortgage and real estate assets; and

14   (vii) the failure to prevent and remedy such improper and harmful actions that resulted in Lehman

15   filing for bankruptcy on September 15, 2008 under Chapter 11 of the United States Bankruptcy

16   Code.[1] As a result of Lehman's and the Defendants' efforts to keep adverse financial information

17   from the investing public, including Plaintiff, Lehman was able to raise money through

18   investments right up to the point when bankruptcy became inevitable. Given these efforts to put a

19   favorable public spin on Lehman's financial woes, and to deflect concern about the viability of

20   investments in Lehman, Plaintiff was not aware, and could not have become aware, of Lehman's

21   serious financial problems while investing in the SM Pool.

22           4.      Defendants knew, or should have known, of the material misstatements and

23   omissions of material facts in the Lehman registration statements for the Notes prior to their filing

24   with the SEC and prior to Plaintiff's purchase of the Notes through the SM Pool.

25   ///

26

27   _____
     [1] No bankrupt party is being sued herein, nor does Plaintiff seek any relief in the United States
     Bankruptcy Court through this action. The outcome of Plaintiff's claims herein will not alter the
28   debtor's rights, liabilities, options, or freedom of actions. Therefore, this action will have no effect
     on the estate being administered in bankruptcy.

5.     A slight glimpse into the adverse facts affecting Lehman's business was first revealed on March 18, 2008 in a Company issued press release announcing decreasing net revenues and declining asset values due to "continued deterioration in the broader credit markets, in particular residential mortgages, commercial mortgages and acquisition finance." However, the disclosure was incomplete and materially misleading as to the full extent of Lehman's financial problems. Moreover, over the next several months, Lehman's officers directly denied the seriousness of such problems. Defendant Fuld told shareholders in April 2008 that "the worst is behind us" and on June 16, 2008 told investors that "[Lehman's] capital and liquidity positions have never been stronger." Thus, in May 2008, the SM Pool purchased an additional $145 million of Lehman commercial paper, increasing its position in Lehman Notes and paper to $338 million, or approximately 11.5% of the SM Pool's total assets.

6.     Within a few weeks after March 18, 2008, Lehman returned to the capital markets raising $4 billion by issuing preferred stock. These and similar efforts failed, and on September 15, 2008, Lehman filed a voluntary petition to reorganize under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. This is the largest bankruptcy filing in history. As a result, the SM Pool wrote down to zero value more than $145 million invested in Lehman Notes.

7.     Plaintiff has suffered significant financial damage as a result of Defendants' material misstatements and omissions in the Lehman registration statements, and brings this action to recover damages incurred thereby as well as the costs and expenses of this litigation and further relief as may be just and proper.

## II.     JURISDICTION AND VENUE

8.     The claims asserted herein arise under, and pursuant to, Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and provisions of California law.

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), which provides: "Federal and State courts; venue; service of process; review; removal; costs. The district courts of the United States and United

///

793655 1

3

1    States courts of any Territory shall have jurisdiction of offenses and violations under this title."

2    The amount in controversy exceeds the jurisdictional minimum of this Court.

3        10.    At all relevant times, each Defendant named herein maintained contacts with and

4    conducted business in California. Lehman, at all times prior to September 15, 2008, maintained

5    offices and conducted substantial business operations in California. Through their employees and

6    agents, Lehman and the Underwriter Defendants, as defined below, sold securities, including the

7    Lehman Notes, to individuals and public entities in California.

8        11.    Venue is proper in the San Mateo Superior Court pursuant to Section 22(a) of the

9    Securities Act, 15 U.S.C. § 77v(a), and under California Code of Civil Procedure section 395,

10   because the acts and omissions complained of herein, including the issuance and dissemination of

11   materially false and misleading information to Plaintiff by virtue of its participation in the SM

12   Pool, and the purchase of over $145 million of Lehman Notes by the SM Pool, took place and

13   caused damages to, and had other adverse effects upon, Plaintiff within the territorial jurisdiction of

14   this Court.

15                                    **III.    PARTIES**

16       12.    Plaintiff City of South San Francisco, by virtue of its participation in the SM Pool,

17   purchased Lehman Notes pursuant to registration statements filed with the SEC, and was damaged

18   thereby.

19       13.    Defendant Citigroup Global Markets, Inc. ("CITI") is a New York corporation with

20   its headquarters located at 388 Greenwich Street, New York, New York. CITI is a subsidiary of

21   Citigroup, Inc. CITI was an underwriter of the Lehman Notes purchased on October 24, 2005,

22   March 27, 2007, May 25, 2007, and January 22, 2008 on behalf of Plaintiff and other participants

23   in the SM Pool.

24       14.    Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") is a Delaware company

25   headquartered at 3333 Peachtree Road, North East, 10th Floor, Atlanta, Georgia. SunTrust is a

26   subsidiary of SunTrust Banks, Inc. SunTrust was an underwriter of the Lehman Notes purchased

27   on January 22, 2008 on behalf of Plaintiff and other participants in the SM Pool.

28   ///

793655 1                                4

15.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") is a Delaware company headquartered at 600 California Street, Suite 1600, San Francisco, California. Wells Fargo is a subsidiary of Wells Fargo & Company. Wells Fargo was an underwriter of the Lehman Notes purchased on October 24, 2005 and January 22, 2008 on behalf of Plaintiff and other participants in the SM Pool.

16.     Mellon Financial Markets, LLC ("Mellon") is a Delaware company headquartered at 1 Mellon Bank Center, Suite 475, Pittsburgh, Pennsylvania. Mellon is a subsidiary of Mellon Financial Corporation. Mellon was an underwriter of the Lehman Notes purchased on January 22, 2008 on behalf of Plaintiff and other participants in the SM Pool.

17.     Defendants CITI, SunTrust, Wells Fargo, and Mellon are collectively referred to herein as the "Underwriter Defendants." Each of the Underwriter Defendants participated in the distribution and sale of certain of the Lehman Note offerings. As underwriters of the Lehman Notes, each of the Underwriter Defendants is jointly and severally liable with the other Defendants for all damages Plaintiff alleges.

18.     Defendant Richard S. Fuld, Jr. ("Fuld") has been Chairman of the Board of Directors of Lehman Brothers Holdings Inc. and Lehman Brothers Inc. ("LBI") since 1994, and Chief Executive Officer ("CEO") of the Company since 1993. He is Chairman of Lehman's Executive Committee. He was President and Chief Operating Officer of Lehman Brothers Holdings Inc. and LBI from 1993 to 1994, President and Co-CEO of the Lehman Brothers Division of Shearson Lehman Brothers Inc. from 1990 to 1993, Vice Chairman of Shearson Lehman Brothers from 1984 until 1990, and has been a Director of LBI since 1984. He joined Lehman Brothers in 1969. Defendant Fuld signed each registration statement for the Lehman Notes as well as all informational filings made by Lehman prior to February 19, 2008.

19.     Defendant Christopher M. O'Meara ("O'Meara") is the head of Lehman's Worldwide Risk Management. From 2004 until December 1, 2007, he was Lehman's Chief Financial Officer ("CFO") and Controller. O'Meara joined the Company in 1995 as Lehman's Global Controller. Defendant O'Meara signed the May 30, 2006 S-3 registration statement and the May 30, 2006 prospectus supplement, pricing supplements and free writing prospectus filed with

793655 1

1    the SEC in conjunction with the sale to the public of the individual Lehman Notes, except for the

2    Notes sold to the SM Pool on January 22, 2008 and February 19, 2008. Defendant O'Meara also

3    signed Lehman's Form 10-Ks for the fiscal years ended 2005 and 2006.

4    20.    Defendant Erin M. Callan ("Callan") was CFO and Global Controller of Lehman

5    from December 2007 until she resigned from that position in June 2008. She was also a member of

6    Lehman's Executive Committee. Callan joined Lehman in 1995, and she led its Global Finance

7    Solutions Group and Global Finance Analytics Group prior to becoming CFO. Defendant Callan

8    signed the registration statements for the Lehman Notes purchased by the SM Pool in January and

9    February of 2008, as well as Lehman's Form 10-K for the fiscal year 2007.

10   21.    Defendants Fuld, O'Meara, and Callan are referred to collectively as the "Officer

11   Defendants." During 2005, 2006, 2007, and continuing into 2008, each of the Officer Defendants

12   received substantial compensation. Defendant Fuld received cash or cash equivalent compensation

13   of $14,500,000 in 2005, $19,523,679 in 2006, and $5,000,000 in 2007. In addition, he received

14   restricted stock grants of $14,942,021 in 2005, $10,903,060 in 2006, and $35,000,000 in 2007.

15   Defendant O'Meara had cash compensation of $2,700,000 in 2005, $2,500,000 in 2006, and

16   $2,850,000 in 2007. In addition, he received restricted stock grants of $2,571,285 in 2005,

17   $3,571,495 in 2006, and $6,642,857 in 2007.

18   22.    Defendant Michael L. Ainslie ("Ainslie") has been a Director of Lehman Brothers

19   Holdings Inc. since 1996, and serves as a member of Lehman's Audit Committee. He is also a

20   Director of Lehman Brothers Bank, FSB. Defendant Ainslie signed each registration statement for

21   the Lehman Notes.

22   23.    Defendant John F. Akers ("Akers") has been a Director of Lehman Brothers

23   Holdings Inc. since 1996. He serves as the Chairman of Lehman's Compensation and Benefits

24   Committee and as a member of the Finance and Risk Committee. Defendant Akers signed each

25   registration statement for the Lehman Notes.

26   ///

27   ///

28   ///

793655 1
                                        6
                          COMPLAINT FOR DAMAGES

24.     Defendant Roger S. Berlind ("Berlind") has been a Director of Lehman Brothers Holdings Inc. since 1985. He serves as a member of Lehman's Audit Committee and the Finance and Risk Committee. Defendant Berlind signed each registration statement for the Lehman Notes.

25.     Defendant Thomas H. Cruikshank ("Cruikshank") has been a Director of Lehman Brothers Holdings Inc. since 1996 and serves as the Chairman of Lehman's Audit Committee and as a member of the Nominating and Corporate Governance Committee. He is also a Director of LBI. Defendant Cruikshank signed each registration statement for the Lehman Notes.

26.     Defendant Marsha Johnson Evans ("Evans") has been a Director of Lehman Brothers Holdings Inc. since 2004. She serves as the Chair of Lehman's Nominating and Corporate Governance Committee, and as a member of the Compensation and Benefits Committee and the Finance and Risk Committee. Defendant Evans signed each registration statement for the Lehman Notes.

27.     Defendant Sir Christopher Gent ("Gent") has been a Director of Lehman Brothers Holdings Inc. since 2003. He serves as a member of Lehman's Audit Committee and the Compensation and Benefits Committee. Defendant Gent signed each registration statement for the Lehman Notes.

28.     Defendant Roland A. Hernandez ("Hernandez") has been a Director of Lehman Brothers Holdings Inc. since 2005. He serves as a member of Lehman's Finance and Risk Committee. Defendant Hernandez signed each registration statement for the Lehman Notes.

29.     Defendant Henry Kaufman ("Kaufman") has been a Director of Lehman Brothers Holdings Inc. since 1995. He serves as the Chairman of Lehman's Finance and Risk Committee. Defendant Kaufman signed each registration statement for the Lehman Notes.

30.     Defendant John D. Macomber ("Macomber") has been a Director of Lehman Brothers Holdings Inc. since 1994. He serves as a member of Lehman's Compensation and Benefits Committee, the Executive Committee, and the Nominating and Corporate Governance Committee. Defendant Macomber signed each registration statement for the Lehman Notes.

31.     Defendants Fuld, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez, Kaufman, and Macomber are collectively referred to herein as the "Director Defendants."

793655 1                                    7

1    Defendants Fuld, O'Meara, Callan, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Hernandez,

2    Kaufman, and Macomber are collectively referred to herein as the "Individual Defendants."

3        32.    Each of the Individual Defendants and each of the Underwriter Defendants

4    participated in the drafting, preparation, and/or approval of various false and misleading statements

5    contained in the registration statements in connection with the offering of the Lehman Notes, as

6    complained of herein. Each of these Defendants was responsible for ensuring the truth and

7    accuracy of the representations contained in the registration statements in connection with the

8    offering of the Lehman Notes.

9        33.    Defendant Ernst is a worldwide public accounting firm with numerous offices and

10   partners located in California. For the fiscal years ended November 30, 2005, 2006, and 2007,

11   Ernst acted as Lehman's public auditors and issued unqualified audit opinions on the consolidated

12   financial statements of Lehman for those fiscal years.

13       34.    Plaintiff is ignorant of the true names and capacities of the other Defendants sued

14   herein as Does 1 through 20, inclusive (the "Doe Defendants"), and therefore sues these Doe

15   Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the Does' true

16   names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges,

17   that each such fictitiously named Doe Defendant is legally responsible in some manner for the

18   events and conduct referred to herein, and legally caused injury and damages to Plaintiff as herein

19   alleged.

20       35.    At all times pertinent, each Defendant was an agent and/or employee of the other

21   Defendants, and each of them, and was acting in the course and scope of such agency and/or

22   employment, and with the consent, permission, and/or authorization of the other Defendants, and

23   each of them. Defendants, and each of them, are individually sued herein as participants and aiders

24   and abettors in the improper acts and transactions alleged herein.

25       36.    Each of the Defendants owed to the purchasers of Lehman Notes, including

26   Plaintiff, a duty to make a reasonable and diligent investigation of the statements contained in the

27   registration statements at the time they became effective. This duty included performing an

28   appropriate investigation to ensure that the statements contained in the registration statements were

793655.1                                  8

1  true, and that there were no omissions of material fact required to be stated in order to make the

2  statements contained in the registration statements not misleading. As herein alleged, each of the

3  Defendants violated these specific duties and obligations.

4    37.    Non-party Lehman Brothers Holdings Inc. is a Delaware corporation with its

5  principal executive offices located at 745 Seventh Avenue, New York, New York. Lehman is an

6  investment banking firm which, through its subsidiaries, provides various financial services to

7  corporations, governments and municipalities, institutions, and high-net-worth individuals

8  worldwide. The Company's activities include raising capital for clients through securities

9  underwriting and direct placements, corporate finance, mortgage and real estate related activities,

10  merchant banking, securities sales and trading, research services, and private client services. On

11  September 15, 2008, Lehman filed a voluntary petition to reorganize under Chapter 11 of the

12  United States Bankruptcy Code. For this reason, Lehman has not been named as a Defendant in

13  this Complaint.

14    38.    At all times relevant to these claims, non-parties County of San Mateo and Lee

15  Buffington, in his legal capacity as Tax Collector – Treasurer of San Mateo County, were supposed

16  to manage the SM Pool for the benefit of Plaintiff and other public entities that invested monies in

17  the SM Pool. Pursuant to the written Investment Policy Statement dated January 2008, the County

18  of San Mateo acknowledged that in managing the SM Pool's assets, it adhered to the "Prudent

19  Person Rule." The Lehman employees and agents that solicited the SM Pool's investment in the

20  Lehman Notes knew, or should have known, the terms and the requirements of the Investment

21  Policy Statement as well as the contents of the previous years' versions of that Statement.

## IV.    FACTUAL ALLEGATIONS

23    39.    As a member of the SM Pool, Plaintiff invested financial assets obtained from tax

24  collections, bond measures, and other public revenue sources in a common fund managed by the

25  County of San Mateo. Pursuant to the Investment Policy Statement dated January 2008, the SM

26  Pool was to meet the needs of liquidity and long term investing of public entities in San Mateo

27  County, including Plaintiff. The Pool was managed by the San Mateo County Treasurer. As of

28  ///

793655 1                                    9

1    August 29, 2008, Plaintiff's interest in the SM Pool was $7,793,168 of the approximately $2.6
2    billion of the SM Pool's assets.

3        40.    Since 1998, over seven million homeowners in the United States have purchased
4    homes using subprime mortgages, loans made to borrowers who do not qualify for conventional
5    mortgages. By the end of 2007, over one million of those homeowners had defaulted on their
6    loans. Unbeknownst at the time, the origins of the current mortgage crisis and Lehman's
7    involvement can be traced back to at least 2001. Using the cheap money available after the Federal
8    Reserve drastically cut interest rates following the attacks of September 11, 2001, Wall Street
9    investment firms found a new money source in the emerging subprime mortgage market. Lehman
10   was the leading participant in this market during 2002-2003, and very nearly owned this new and
11   profitable market. Lehman became involved in all aspects of the subprime mortgage market –
12   acting as underwriters for subprime lenders going public, providing lines of credit for their
13   subprime loans, and buying the mortgages to be converted into asset-backed securities for resale to
14   investors. At all stages of this cycle, Lehman collected substantial amounts of fees and interest
15   payments from its activities.

16       41.    By at least 2003, Lehman's involvement in the United States mortgage market, in
17   particular the subprime mortgage market, represented a significant and material portion of its
18   revenues and earnings. Besides its support of numerous subprime lenders, Lehman participated in
19   all aspects of the mortgage market including origination, servicing and securitization of mortgages.
20   In 2003, Lehman acquired Aurora Loan Services LLC ("Aurora"). Aurora originated and serviced
21   mortgages mainly in what became known as the subprime mortgage market. Lehman's exposure
22   to mortgages, both residential and commercial, including subprime loans, continued to increase by
23   material amounts in 2004, 2005, 2006, and 2007. For example, Lehman originated around $27
24   billion of commercial mortgages in 2005. In 2006, commercial loans by Lehman increased to $34
25   billion and approximately $60 billion in 2007. By early 2008, Lehman held the largest dollar
26   amount of commercial mortgages compared to any other financial company in the United States.
27   ///
28   ///

42.     In 2005, Lehman described itself as:

> a market leader in mortgage-backed securities trading. We originate
> residential and commercial mortgage loans as part of our mortgage
> trading and securitization activities. We originated approximately
> $85 billion and $65 billion of residential mortgage loans in 2005 and
> 2004, respectively. We securitized approximately $133 billion and
> $101 billion of residential mortgage loans in 2005 and 2004,
> respectively....

Lehman's Form 10-K for fiscal year ended November 30, 2005.

43.     Lehman's involvement in the subprime market was also providing a substantial and increasing portion of its revenues and reported profits from 2004 through 2007. In 2006, Lehman alone underwrote $51.8 billion in securities backed by subprime loans. With numerous unscrupulous lenders promising borrowers zero percent down loans with no credit checks, Lehman bankrolled such companies' massive fraud on homeowners while collecting substantial fees at every step in the process. Unbeknownst to the investing public, by September 2007, over 20% of the subprime loans that Lehman had securitized in 2006 were in default.

44.     As of the first quarter of fiscal year 2005 (quarter ended February 28, 2005), Lehman increasingly relied on the mortgage markets, particularly subprime mortgages, for its revenue and profit growth. Net revenue from Lehman's Capital Markets' division, which included its mortgage-backed and asset-backed securities operations, increased over the previous year by 21% to $2.7 billion. Lehman stated that "[t]he record results in Fixed Income Capital Markets reflect a strong performance across all major businesses, and **in particular mortgages and interest rate products**." (Emphasis added) Its reliance on the mortgage markets continued in the second quarter of 2005 (quarter ended May 31, 2005). "[T]he Fixed Income business reported revenues of $1.8 billion in the second quarter of fiscal 2005, a 23% increase from $1.4 billion reported in the prior year.... Mortgages and real estate remained resilient, **driven by high levels of securitization and asset monetization activity**." (Emphasis added) Defendant Fuld stated in a company press release dated June 14, 2005 that "[w]ith our continued discipline around expense and risk management, we are well-positioned to continue to deliver strong returns to our shareholders."

///

45. In the second half of fiscal 2005, Lehman's financial results continued to be driven by its mortgage-backed and asset-backed securities business. In the third quarter of fiscal 2005 (quarter ended August 31, 2005), Lehman reported fixed income revenues of $1.9 billion, up 37% from the previous year's third quarter. "These results were attributable to increased contributions from the [Company's] commercial mortgage and real estate business, [and] continued strength in residential mortgages...." The first purchase of Lehman Notes that are the subject of this Complaint was made on October 24, 2005, after Lehman reported its third quarter 2005 financial results. On December 13, 2005, Lehman reported financial results for the fourth quarter and the full fiscal year. Lehman's record results included fixed income revenues showing a 22% increase in the fourth quarter of 2005 over the fourth quarter of 2004.

46. As disclosed in its Form 10-K for the fiscal year ended November 30, 2005, which was filed with the SEC on February 13, 2006 ("2005 10-K"), Lehman's mortgage business represented a significant portion of its operations:

> *Mortgage Origination, Secured Lending and Mortgage- and Asset-Backed Securities.* Lehman Brothers Bank, FSB, offers traditional and online mortgage banking services to individuals as well as institutions and their customers. Lehman Brothers Bankhaus AG, a German bank, offers lending and real estate financing to corporate and institutional borrowers worldwide. We originate commercial and residential mortgage loans through Lehman Brothers Bank, Lehman Brothers Bankhaus and other subsidiaries in the U.S., Europe and Asia. We are a leading underwriter of and market-maker in residential and commercial mortgage- and asset-backed securities and are active in all areas of secured lending, structured finance and securitized products. We underwrite and make markets in the full range of U.S. agency-backed mortgage products, mortgage-backed securities, asset-backed securities and whole loan products. We are also a leader in the global market for residential and commercial mortgages (including multi-family financing) and leases. In 2005, we established Lehman Brothers Commercial Bank, a Utah-chartered industrial loan company, in order to issue certificates of deposit to institutions and conduct certain lending activities.

The 2005 10-K disclosed that fixed income revenue, which mainly represented revenues received from its mortgage operations, had increased by 28% over 2004 to $7.3 billion. The 2005 10-K stated:

> Fixed Income net revenues were a record $7.3 billion in 2005, increasing 28% compared with 2004 driven by double digit revenue increases from each geographic region and record revenues across a number of businesses including commercial mortgage and real estate,

793655 1

12

residential mortgage origination and securitization, and interest rate products. Revenues from our commercial mortgage and real estate businesses increased substantially in 2005 reaching record levels, as the strong demand for commercial real estate properties, the recovery in certain property markets and relatively low interest rates drove asset sales and robust levels of securitizations. Revenues from our residential mortgage origination and securitization businesses increased in 2005 from the robust levels in 2004, reflecting record volumes and the continued benefits associated with the vertical integration of our mortgage origination platforms. We originated approximately \$85 billion and \$65 billion of residential mortgage loans in 2005 and 2004, respectively. We securitized approximately \$133 billion and \$101 billion of residential mortgage loans in 2005 and 2004, respectively, including both originated loans and those we acquired in the secondary market. While the performance in our mortgage businesses reached record levels, these businesses were affected by somewhat lower levels of mortgage origination volumes and revenues in the U.S. in the latter half of 2005, partly offset by stronger volumes and revenues outside the U.S. We originated approximately \$27 billion and \$13 billion of commercial mortgage loans in 2005 and 2004, respectively, the majority of which has been sold through securitization or syndication activities during both 2005 and 2004.... The mortgage securitization business was notably strong, with revenues in mortgage products benefiting from the low rate environment as well as the continued vertical integration of our mortgage origination platforms.

The 2005 10-K was signed by Defendants Fuld, O'Meara, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Kaufman, Hernandez, and Macomber.

47. Throughout 2005, as Lehman reported record financial results, driven in large part by its mortgage-backed and asset-backed securities operations, problems began to emerge with many of the subprime lenders it had relied upon for such revenues. A growing number of these lenders were failing in 2005. Even as early as November 2004, Defendant Fuld recognized **privately** that low interest rates and cheap credit would create a bubble that could one day pop. "It's paving the road with cheap tar," Fuld admitted to colleagues. "When the weather changes, the potholes that were there will be deeper and uglier."

48. On May 30, 2006, Lehman filed with the SEC a Shelf Registration Statement on Form S-3 (the "May 30th Offering Materials") and a prospectus supplement for medium term Notes. Thereafter, Lehman issued and filed with the SEC prospectus supplements, pricing supplements and/or free writing prospects whereby Lehman offered specific debt securities that were purchased by the SM Pool. In addition, the May 30th Offering Materials incorporated by

793655 1
13
COMPLAINT FOR DAMAGES

1    reference all future informational filings made by Lehman with the SEC, including its Form 10-Ks

2    and 10-Qs. Thus, by reference to the May 30th Offering Materials, Plaintiff is also referring to all

3    disclosures of material information and/or the omissions of any material facts made in SEC filings

4    by Lehman prior to the date the SM Pool purchased the Lehman Notes identified below.

5         49.    Pursuant to the May 30th Offering Materials, except as noted in footnote two below,

6    the SM Pool purchased a number of medium term Lehman Notes including the following:

| Purchase Date | Maturity Date | Cost |
|---|---|---|
| 10/24/2005[2] | 10/22/2008 | $10,000,000 |
| 8/21/2006 | 8/21/2009 | $25,000,000 |
| 11/16/2006 | 11/16/2009 | $20,000,000 |
| 12/21/2006 | 12/23/2008 | $20,000,000 |
| 3/23/2007 | 3/23/2009 | $20,000,000 |
| 5/25/2007 | 5/25/2010 | $25,000,000 |
| 1/22/2008 | 1/24/2013 | $14,931,600 |
| 2/19/2008 | 8/21/2009 | $9,724,000 |
| **Lehman Notes Total Cost** | | **$144,655,600** |

17   On September 30, 2008 the SM Pool wrote the value of these Lehman Notes down to $0.

18        50.    Defendants violated Section 11 of the Securities Act in the sale of these securities to

19   the SM Pool. Under Section 11, directors and officers of the issuer of the securities, the

20   underwriters of such offerings, and public accountants providing opinions as to the accuracy of the

21   issuer's financial statements, among others, are liable in negligence for the filing of registration

22   statements that failed to fully and accurately inform investors of all material facts and industry

23   trends affecting the issuer.

24   ///

25

26   _____

   [2] The Lehman medium term Notes purchased on October 24, 2005 were issued pursuant to the
27   Shelf Registration Statement and prospectus dated May 18, 2005, the prospectus supplement dated
     May 18, 2005, and Pricing Supplement No. 40 dated October 19, 2005. These are collectively
28   referred to as the "May 18th Offering Materials." The May 18th and the May 30th Offering
     Materials are collectively referred to as the "Offering Materials."

1    51.    A key policy underlying Section 11 liability is to enable prospective investors to

2    make informed investment decisions based on the disclosure of adequate and truthful information

3    regarding the issuer, its associated persons, and the offering. This policy is violated when a

4    registration statement contains materially false and misleading statements.

5    52.    One reason, among others, that the Lehman Offering Materials for the Notes,

6    including the informational filings made with the SEC prior to the date the Lehman Notes were

7    purchased by the SM Pool, were materially false and misleading is because they failed to reveal

8    Lehman's significant exposure in the mortgage-backed securities markets as the largest underwriter

9    of such mortgage-backed securities. Nowhere in the Offering Materials did Lehman reveal its

10   substantial involvement with predatory subprime lenders, including its underwriting of wholesale

11   lines of credit to such lenders and Lehman's purchase of their toxic loans for resale to investors

12   through the securitization process. The Offering Materials also failed to disclose that as a result of

13   the deteriorating market conditions and rapidly declining asset values, particularly as to real estate

14   assets, Lehman was in desperate need for capital and at substantial risk of defaulting on the Notes.

15   53.    The Offering Materials materially misrepresented the risks associated with the

16   purchase of the Notes. Significantly missing from the disclosures in the "Risk Factors" section of

17   the May 30th Offering Materials was any reference to the effect a down market would have on

18   Lehman's financial position or the price of Notes based upon the Company's business operations.

19   Nor did Lehman disclose that its residential and commercial mortgage and real estate assets were

20   overvalued by **billions of dollars**. The May 18th Offering Materials also failed to make any such

21   disclosure. Had Defendants conducted a proper and adequate due diligence investigation, they

22   would have known that the softening mortgage market, weakening credit market, and declining

23   real estate values would have a material impact on the price of the Lehman Notes.

24   54.    During fiscal year 2006, Lehman's exposure to the commercial and residential

25   mortgage markets expanded further. In its Form 10-K for the fiscal year ended November 30,

26   2006, which was filed with the SEC on February 13, 2007 ("2006 10-K"), Lehman disclosed that

27   fixed income revenue had increased to $8.4 billion, an increase of 15% over fiscal year 2005. A

28   ///

793655.1                                    15

material portion of fixed income revenues came from Lehman's operations in commercial and residential mortgage origination and securitization of mortgage loans. The 2006 10-K was signed by Defendants Fuld, O'Meara, Ainslie, Akers, Berlind, Cruikshank, Evans, Gent, Kaufman, Hernandez, and Macomber.

55.    Nowhere in either the 2005 10-K or 2006 10-K did Lehman reveal the extreme risks it had taken upon itself or its material exposure to a decline in the residential and commercial real estate markets. In fact, on March 14, 2007, when Lehman announced its "record net revenues" for the first quarter of fiscal year 2007, Defendant O'Meara, Lehman's CFO at the time, stated in a conference call with analysts that as a result of Lehman's real estate exposure, it was "well positioned to benefit from this evolving situation given our experience in this sector as well as our ample liquidity and risk management practices." O'Meara represented that Lehman had no material exposure to rising delinquencies in the subprime mortgage market stating, "this is reasonably well contained at this point."

56.    Throughout the rest of 2007 and the first eight months of 2008, Lehman, through SEC filings and the public statements of its officers, continued to deny that Lehman faced any material risk from the plunging United States real estate markets. While other financial firms took multi-billion dollar write-downs on their mortgage-backed securities, Lehman denied any significant problems with its mortgage related business. On July 18, 2007, Lehman spokeswoman Kerrie Cohen responded to questions about the Company's exposure to subprime mortgage loan defaults by stating: "The rumors regarding subprime exposure are totally unfounded." Despite having the largest mortgage related holdings of any Wall Street firm, Lehman disclosed on September 18, 2007 a write-down of only $700 million of assets, with no disclosure whatsoever as to what portion of that amount came from mortgage-backed assets. In comparison, Citibank disclosed a credit loss of $5.9 **billion** on mortgage related securities, UBS a write-down of approximately $3.7 **billion** and Merrill Lynch an astounding $7.9 **billion** (more than 11 times Lehman's write-down), all around the same time. In statements to analysts and investment professionals during the fall of 2007, Lehman officers continued to assert that it would not be

///

necessary to write off any significant portion of Lehman's mortgage-backed securities portfolio. In fact, following the collapse of two Bear Stearns hedge funds in the summer of 2007, Lehman increased its exposure to the subprime market by purchasing additional mortgage-backed securities in early 2008.

57. On January 29, 2008, Lehman filed its Form 10-K for the fiscal year ended November 30, 2007 ("2007 10-K"). While acknowledging some of the problems it faced from what it described as a "slowdown" in the United States' housing market, Lehman again failed to disclose in its 2007 10-K the real and severe problems with its mortgage and real estate operations. Instead, Lehman reported:

> On the basis of a record first half and a reasonably successful
> navigation of difficult market conditions in the second half, we
> achieved our fourth consecutive year of record net revenues, net
> income and diluted earnings per common share in 2007. Net income
> totaled $4.2 billion, $4.0 billion and $3.3 billion in 2007, 2006 and
> 2005, respectively, increasing 5% in 2007 and 23% in 2006 from the
> corresponding 2006 and 2005 periods, respectively. Diluted earnings
> per common share were $7.26, $6.81 and $5.43 in 2007, 2006 and
> 2005, respectively, up 7% in 2007 and 25% in 2006 from the
> corresponding prior periods, respectively.

58. At the various times Lehman sold Notes to the SM Pool pursuant to the Offering Materials, Lehman and the Underwriter Defendants were aware of material adverse facts concerning the Company's mortgage-backed asset portfolio and the mortgage markets in general. Despite such knowledge, Lehman's officers and directors failed to take the necessary steps to lower Lehman's exposure or to disclose the risks to the purchasers of the Lehman Notes. The market volatility was adversely and materially harming Lehman's business, which was driven by an aggressive pursuit of the mortgage-backed underwriting business, and market volatility would inevitably adversely affect the Company's business in the future.

59. Even though Lehman was aware of and experiencing material problems with its mortgage-backed assets at the various times that the SM Pool purchased the Lehman Notes, the Individual Defendants continued to downplay such problems. On March 18, 2008, Lehman released financial results for the quarter ended February 29, 2008. The Company's press release stated the following about Lehman's Capital Markets division:

1
2
3
4

> [R]eported net revenues of $1.7 billion in the first quarter of fiscal 2008, a decrease of 52% from $3.5 billion in the first quarter of fiscal 2007. Fixed Income Capital Markets reported net revenues of $262 million, a decrease of 88% from $2.2 billion in the first quarter of fiscal 2007 largely a result of continued deterioration in the broader credit markets, **in particular residential mortgages, commercial mortgages and acquisition finance.**

5   (Emphasis added)

6     60. Despite the sharp downturn in revenues for the quarter, Lehman's officers continued

7   to deny that Lehman faced any serious financial problems. Defendant Callan stated in a conference

8   call on March 18, 2008, "I think it's fair to say we continue to do a very, very good job managing

9   the risk of residential mortgages, an area that I think we're credited with a lot of expertise, a great

10   franchise." Lehman's common stock rose by over 45% on that date. While the Company's

11   prospects temporarily appeared to improve after March 2008, Lehman's continued exposure in the

12   mortgage-backed asset markets, particularly in subprime mortgage-backed securities, remained

13   substantial. Despite such exposure, Lehman officers continued their upbeat assessments. At

14   Lehman's annual shareholders meeting in April 2008, Defendant Fuld stated that "the worst is

15   behind us."

16     61. On June 3, 2008, *Bloomberg News* published an article titled "Lehman Loses up to

17   $700 million on Hedging Positions, FT Says." The article noted that the Company lost between

18   $500 and $700 million in the second quarter of 2008 which "may prompt the bank to seek more

19   capital by selling a stake to an outside investor." On June 9, 2008, the Company issued a press

20   release announcing that it had priced a $4 billion public offering of 143 million shares of common

21   stock at $28 per share.

22     62. The very same day, and a full week ahead of schedule, the Company issued a press

23   release announcing its financial results for the second quarter ended May 31, 2008. The Company

24   reported a net loss of $2.8 billion. The press release went on to state:

25   ///

26   ///

27   ///

28   ///

1

2

3

4

> **Capital Markets is expected to report net revenues of negative ($2.4) billion in the second quarter of fiscal 2008**, compared to $1.7 billion in the first quarter of fiscal 2008 and $3.6 billion in the second quarter of fiscal 2007. **Fixed Income Capital Markets is expected to report net revenues of negative $3.0 billion**, compared to $0.3 billion in the first quarter of 2008 and $1.9 billion in the second quarter of 2007.

5

(Emphasis added)

6

7

8

63.    The almost $3 billion loss represented the Company's first-ever loss since becoming a public company in 1994. Lehman also said that it would attempt to raise an additional $6 billion in new capital through the issuance of stock.

9

10

11

12

13

64.    On Monday, June 16, 2008, Lehman released its actual results for the second quarter of 2008, which matched the $2.8 billion or $5.14 per share numbers announced a week prior. As it turns out, most of the loss was due to about $3.7 billion in write-downs for bad loans. Yet, on that same date, Defendant Fuld again downplayed the serious financial problems at Lehman telling Lehman investors that "[o]ur capital and liquidity positions have never been stronger."

14

15

16

17

18

19

20

65.    On September 10, 2008, the Company issued a press release announcing preliminary financial statements for the third quarter ended August 31, 2008. The Company reported a net loss of $3.9 billion and announced "a comprehensive plan of initiatives to reduce dramatically the firm's commercial real estate and residential mortgage exposure, generate additional capital through the sale of a majority stake of the Investment Management Division and reduce the annual dividend, in order to maximize value for clients, shareholders and employees." The press release further stated in pertinent part:

21

OVERVIEW OF PRELIMINARY THIRD QUARTER RESULTS

22

23

24

25

26

27

28

> Lehman Brothers reported a preliminary net loss of approximately ($3.9) billion, or ($5.92) per common share (diluted), for the third quarter ended August 31, 2008, compared to a net loss of ($2.8) billion, or ($5.14) per common share (diluted), for the second quarter of fiscal 2008 and net income of $887 million, or $ 1.54 per common share (diluted), for the third quarter of fiscal 2007. The net loss was driven primarily by gross mark-to-market adjustments stemming from writedowns on commercial and residential mortgage and real estate assets. Net revenues (total revenues less interest expense) for the third quarter of fiscal 2008 are expected to be negative ($2.9) billion, compared to negative ($0.7) billion for the second quarter of fiscal 2008 and $4.3 billion for the third quarter of fiscal 2007. Net revenues for the third quarter of fiscal 2008 reflect negative mark-to-market adjustments and principal trading losses, net of gains on

certain risk mitigation strategies and certain debt liabilities.

During the fiscal third quarter, the Firm is expected to incur negative gross mark-to-market adjustments on assets of ($7.8) billion, including gross negative mark-to-market adjustments of ($5.3) billion on residential mortgage-related positions, ($1.7) billion on commercial real estate positions, ($600) million on other asset-backed positions, and ($200) million on acquisition finance positions. These mark-to-market adjustments were offset by $800 million of hedging gains during the quarter and $1.4 billion of debt valuation gains. The Firm is also expected to record losses on principal investments of approximately $760 million.

In order to increase operating efficiency, the Firm has eliminated approximately 1,500 positions since the beginning of the third quarter in discretionary corporate areas and businesses that are in secular decline.

66. Despite the enormous losses reported in the press release, Lehman continued to downplay the gravity of the Company's financial situation. In a conference call on September 10, 2008, the same day the press release was issued, Defendant Fuld stated, "We've been through adversity before, and we always come out a lot stronger."

67. Less than a week later, on September 15, 2008, Lehman filed a voluntary petition to reorganize under Chapter 11. This is the largest bankruptcy filing in history. The market for Lehman Notes became illiquid the morning of September 15, 2008. On September 30, 2008, the SM Pool marked the value of its Lehman Notes to $0. The SM Pool's Lehman Notes had a cost basis of $154,645,980.

68. On September 23, 2008, CNN reported that the Federal Bureau of Investigation ("FBI") is investigating, among other companies, Lehman and their senior executives for potential mortgage fraud. The FBI is reportedly investigating whether anyone at Lehman, including its senior executives, had any responsibility for providing "misinformation."

69. The purpose and intent of Lehman's misleading statements regarding the state of their liquidity and assets was to lull the investing public into a false sense of security, including Plaintiff. Taken in the aggregate, all of these statements show that while some limited negative financial information was being released before the bankruptcy, the picture being painted by Lehman, and supported by the Defendants, was that the Company would survive, and investments

///

793655 1                                      20

1    would be safe. Because of the reassurances the Company continued to provide, investors such as

2    Plaintiff did not believe they had to take any extraordinary action to protect their investments.

3                      **V.      THE ROLE OF PUBLIC AUDITOR ERNST**

4        70.      Defendant Ernst performed an annual audit of Lehman's consolidated financial

5    statements for the fiscal years ended November 30, 2005, 2006, and 2007. The May 30th Offering

6    Materials incorporated by reference, as hereinabove alleged, Lehman's audited consolidated

7    financial statements for each of these fiscal years as well as the audit opinion of Ernst issued

8    following each of its annual audits. In addition, Ernst reviewed the quarterly consolidated financial

9    statements for each of these years, which were in the Company's 10-Q filings. Defendant Ernst

10   issued a "Report of Independent Registered Public Accounting Firm" in the 10-Qs (the same title

11   as used in the audit reports), which was based on Ernst's review of whether material modifications

12   were required to the consolidated financial statements as reviewed by Ernst. This quarterly review

13   work also became part of the annual audit work, and the quarterly review work was relied upon to

14   complete the annual audits. Defendant Ernst also acknowledged in the 10-Qs that it was aware of

15   multiple registration statements issued by Lehman.

16       71.      By virtue of its longstanding position as Lehman's public auditors and its purported

17   expertise in real estate and complex debt securities markets, Defendant Ernst represented that it

18   was uniquely qualified to act as auditor of Lehman's increasingly complex business operations.

19   Among the critical tasks Ernst had in auditing Lehman's 2005, 2006, and 2007 consolidated

20   financial statements was to ensure that Lehman had properly stated the value of its asset-backed

21   and mortgage-backed securities and its risk of exposure in the real estate and mortgage markets. In

22   particular, Lehman had material exposure to risk in real estate loans it originated on residential and

23   commercial properties, as well as mortgage-backed and asset-backed securities. In certain notes to

24   the audit reports, Lehman touted itself as a "market leader" in both mortgage-backed and asset-

25   backed securitizations and other structured financing arrangements. In essence, Lehman would

26   originate loans and package those loans to sell as securities. In both instances, the quality of the

27   loans themselves, as well as the fair value of those loans, was critical to the financial position of

28   ///

793655 1                                              21

1    Lehman, and was by virtue of this importance, essential to disclose properly in the consolidated

2    financial statements.

3          72.     For each of the fiscal years 2005, 2006, and 2007, Defendant Ernst, by virtue of its

4    unique position as Lehman's auditor, was fully aware that Lehman's very survival depended in

5    large part on the performance of its real estate loan portfolio, mortgage-backed securitizations, and

6    asset-backed securitizations. Defendant Ernst was also uniquely positioned to understand how the

7    real estate market, and the subprime market in particular, could generate huge losses for Lehman.

8    Moreover, at all times Ernst knew that investors, creditors, analysts, and rating agencies, among

9    others, would rely upon the accuracy of Lehman's consolidated financial statements and that

10   Ernst's audit opinion reflected a reasonable and complete examination of those consolidated

11   financial statements by Ernst in accordance with the standards of the Public Company Accounting

12   Oversight Board ("PCAOB"). The SEC has designated the PCAOB as a body with the authority to

13   promulgate auditing and other professional standards relating to audits of public companies in the

14   United States. Public accounting firms who are registered with PCAOB, such as Ernst, must

15   adhere to all PCAOB standards in the audits of issuers such as Lehman.

16         73.     As a public accountant and auditor of Lehman, Ernst held itself out as an expert in

17   financial accounting and auditing matters, and thus is liable under Section 11 of the Securities Act

18   for Lehman's materially false and misleading audit reports for fiscal years ended 2005, 2006, and

19   2007.

20         74.     Lehman's consolidated financial statements for the fiscal years ended 2005, 2006,

21   and 2007 were materially false and misleading because they, among other things, failed to

22   accurately disclose the true financial condition of Lehman; overstated the fair value of Lehman's

23   real estate assets, including residential and commercial real estate loans originated by Lehman;

24   overstated income; and failed to make necessary adjustments, write-downs, or establish adequate

25   reserves related to the value of real estate loans, mortgage-backed securities held by Lehman, and

26   contingencies associated with Lehman's mortgage-backed and asset-backed securitizations. As a

27   result, the Lehman consolidated financial statements were not prepared in accordance with United

28   States Generally Accepted Accounting Principles ("US GAAP"). In performing its audits of

793655 1

1  Lehman's consolidated financial statements, Ernst failed to perform its audits in accordance with

2  the standards of the PCAOB.

3     75.    For each of Lehman's consolidated financial statements for the fiscal years 2005,

4  2006, and 2007, Ernst issued an unqualified opinion as to the accuracy of those statements. For

5  example, for fiscal year 2007 Ernst stated:

6     **Board of Directors and Stockholders of Lehman Brothers
       Holdings Inc.**

7

8     We have audited the accompanying consolidated statement of
       financial condition of Lehman Brothers Holdings Inc. (the
       "Company") as of November 30, 2007 and 2006, and the related

9     consolidated statements of income, changes in stockholders' equity,
       and cash flows for each of the three years in the period ended

10    November 30, 2007. Our audits also included the financial statement
       schedule listed in the Index at Item 15(a). These financial statements

11    and schedule are the responsibility of the Company's management.
       Our responsibility is to express an opinion on these financial

12    statements based on our audits.

13    We conducted our audits in accordance with the standards of the
       Public Company Accounting Oversight Board (United States).

14    Those standards require that we plan and perform the audit to obtain
       reasonable assurance about whether the financial statements are free

15    of material misstatement. An audit includes examining, on a test
       basis, evidence supporting the amounts and disclosures in the

16    financial statements. An audit also includes assessing the accounting
       principles used and significant estimates made by management, as

17    well as evaluating the overall financial statement presentation. We
       believe that our audits provide a reasonable basis for our opinion.

18

19    In our opinion, the financial statements referred to above present
       fairly, in all material respects, the consolidated financial position of
       Lehman Brothers Holdings Inc. at November 30, 2007 and 2006, and

20    the consolidated results of its operations and its cash flows for each
       of the three years in the period ended November 30, 2007, in

21    conformity with U.S. generally accepted accounting principles.
       Also, in our opinion, the related financial statement schedule, when

22    considered in relation to the basic financial statements taken as a
       whole, presents fairly in all material respects the information set

23    forth therein.

24    We also have audited, in accordance with the standards of the Public
       Company Accounting Oversight Board (United States), the

25    effectiveness of Lehman Brothers Holdings Inc.'s internal control
       over financial reporting as of November 30, 2007, based on criteria

26    established in Internal Control-Integrated Framework issued by the
       Committee of Sponsoring Organizations of the Treadway

27    Commission and our report dated January 28, 2008 expressed an
       unqualified opinion thereon.

28

1    76.    For the fiscal years ended 2005 and 2006, Defendant Ernst issued similar

2    unqualified opinions. Each of these opinions by Ernst was materially false and misleading at the

3    time it was made. Ernst, as one of the largest public accounting firms in the world, knew that

4    investors, creditors, and others were intended recipients of these audit reports and opinions, and

5    that such users would rely upon the same in deciding to purchase and/or continue to hold the

6    Lehman Notes. In particular, the Plaintiff, by virtue of its participation in the SM Pool and

7    otherwise, did rely on the accuracy of the subject audit reports and opinions. The continued

8    issuance of clean audit opinions, and the failure to correct existing clean opinions, were critical to

9    Lehman's efforts to maintain a public front of safety and security for investors even while the

10   Company plummeted towards it demise. In providing clean audit opinions, Defendant Ernst gave

11   enormous credibility to Lehman and failed to fulfill its role as a public watchdog, as required by

12   the United States Supreme Court.

13   77.    The purpose of Defendant Ernst's audits of Lehman's consolidated financial

14   statements was to reach an opinion as to whether those statements set forth in all material respects

15   Lehman's financial position and results in strict conformity with US GAAP. In planning a

16   complex audit of a company such as Lehman, Ernst had an affirmative duty to both plan and

17   conduct the audits with due professional care so that it could obtain the audit evidence necessary to

18   opine with reasonable assurance that Lehman's consolidated financial statements contained no

19   material misstatements or omissions. *See* AU §§ 230 and 326. Ernst also had the responsibility to

20   plan and conduct the audits of Lehman so as to detect fraud and the extent to which any such fraud

21   would have a materially adverse effect on the consolidated financial statements. *See* AU § 316.

22   Because of its enormous knowledge of the real estate markets, including the markets for the

23   origination and securitization of subprime loans, Ernst should have been even more cautious than

24   usual in designing audit procedures to detect fraud that could materially impact Lehman's

25   consolidated financial statements. However, Ernst did not do so.

26   78.    A proper audit requires both independence from, and questioning of, consolidated

27   financial statements prepared by Lehman's management. Only with such independence and

28   ///

793655 1                              24
                        COMPLAINT FOR DAMAGES

1    intellectual detachment from management could Ernst's ultimate opinion regarding Lehman's

2    consolidated financial statements have had a reasonable basis. The audit opinions issued by Ernst

3    for Lehman's 2005, 2006, and 2007 consolidated financial statements gave an unqualified opinion

4    that the statements were prepared in accordance with US GAAP in all material respects.

5    79.    In fact, Lehman's consolidated financial statements for 2005, 2006, and 2007

6    violated US GAAP in that the statements materially overstated income and assets for each of those

7    fiscal years. As alleged above, beginning in fiscal year 2005 and continuing through fiscal year

8    2007, Lehman overstated the fair value of its real estate related assets, overstated the income

9    derived from those assets and the securitization of mortgages, failed to establish adequate asset

10    loan loss reserves, or reserves for the contingencies associated with its securitization of mortgages

11    and assets, and overstated the value of such securities that it continued to hold and/or those in

12    which it had a retained interest. As a result, the 2005, 2006, and 2007 consolidated financial

13    statements violated US GAAP, and Ernst's opinions, based upon its audits of those statements,

14    were materially false and misleading.

15    80.    As set forth in the Statements of Financial Accounting Concepts ("SFAC"), Concept

16    No. 1, financial statements are audited by independent accountants, such as Ernst, to enhance

17    confidence in the reliability of those statements. Indeed, according to SFAC Concept No. 1,

18    financial reporting should provide information that is useful to investors and creditors, amongst

19    other users of financial statements, and financial statements are recognized to be a basis for making

20    rational decisions as to whether to invest or not. Companies, such as Lehman, and their

21    management are described in SFAC Concept No. 1 as having "stewardship responsibility" to the

22    users of financial statements. The financial information contained therein, and in particular

23    earnings, is commonly the focus for determining whether that stewardship has been properly

24    carried out. Lastly, financial statements need to include explanations and interpretations which

25    help users to understand their contents.

26    81.    Under SFAC, Concept No. 2, it is a central precept of accounting that financial

27    reporting should be relevant and reliable. Reliable means the information should be complete and

28    financial statements should not leave out material facts, especially where such facts are adverse.

793655 1                                    25

1    Management of Lehman, such as the Officer Defendants, knew more about the Company than

2    investors, creditors or other outsiders, and had the responsibility to increase the usefulness of

3    financial reporting by explaining those matters which had a material effect on the financial

4    statements. Defendant Ernst, as Lehman's auditor, was required under PCAOB standards,

5    including AU section 432, to examine the disclosures in the consolidated financial statements and

6    take appropriate action if Lehman management omitted material information required by US

7    GAAP.

8          82.     Instead of adhering to these well established concepts, Lehman prepared and issued

9    its note disclosures in a way that disaggregated the facts, and made it difficult to determine its true

10   exposure to the downturn in the real estate market. The note disclosures, and in particular the notes

11   related to securitizations and other off-balance sheet arrangements, were incomplete and failed to

12   disclose relevant facts in a manner that allowed the user of the consolidated financial statements to

13   determine just how exposed Lehman was to such a downturn. The notes provided certain factual

14   information, but did not put it in appropriate context. For example, in the consolidated financial

15   statements for the fiscal year ending 2006 and issued on February 13, 2007, Lehman disclosed that

16   it securitized approximately $146 billion of residential mortgages in 2006 and $133 billion in 2005.

17   The footnotes fail to adequately disclose how much of those securitizations were in subprime

18   loans, fail to discuss the quality of the creditworthiness or collateral for these securities, and fail to

19   discuss the contingent risk related to subprime securitizations wherein Lehman had retained an

20   interest.

21         83.     These failures to adequately disclose, and to obfuscate by disaggregating material

22   information, are significant. For example, the reported income before taxes for Lehman for 2005

23   was $4.829 billion and $5.905 billion in 2006. In comparison, Lehman's interests in securitizations

24   for residential mortgages was $7.4 billion for 2005 and $7.9 billion in 2006. Write-downs, write-

25   offs, or reserves for low quality loans and retained interests in securitizations, including those for

26   subprime loans, would have a materially adverse impact on income as well as cash flow.

27         84.     In note 11 to the 2006 audited financial statements, Lehman supposedly discloses

28   "Commitments, Contingencies and Guarantees." With respect to loan originations, the note

793655 1                                    26

discloses that at the end of fiscal year 2005, Lehman had $7.7 billion in residential mortgages, and $7.0 billion in 2006. Note 11 refers back to note 3 for further information about Lehman's securitization activities. However, neither footnote makes any disclosure about reserves for bad real estate loans, potential write-downs, or write-offs.

85.  In the consolidated financial statements for the end of fiscal year 2007, Lehman disclosed its subprime residential loan portfolio for the first time. The title of note 3 for 2007 was changed from "Securitizations and Other Off-Balance Sheet Arrangements" to "Financial Instruments and Other Inventory Positions," a particularly obscure title given the financial problems that Lehman was already experiencing in its residential mortgage portfolio. That note also flatly states: "We do not consider ourselves to have economic exposure to the underlying assets in those securitization vehicles." This refers to balances in mortgage-backed and asset-backed securities, which were purportedly transferred, of approximately $12.8 billion in 2007 and $5.5 billion in 2006. The disclosures about non-investment grade retained interests in securitizations is relegated to a footnote, and the format for disclosing mortgage-backed and asset-backed securities is changed so as to make it harder to compare the same note in 2006 to the one in 2007. Lastly, the note discloses that Lehman's total portfolio of U.S. residential subprime mortgages was $5.276 billion in 2007 and $6.849 billion in 2006. There are no disclosures about the risks associated with this portfolio, including, but not limited to, foreclosures, write-offs, write-downs, and the necessity of reserves. Despite the fact that net income before taxes, as set forth in the 2007 income statement, was $6.013 billion for 2007 and $5.905 billion for 2006 (meaning that the total exposure to the subprime portfolio was greater than pre-tax income in 2006 and accounted for most of the Company's income in 2007), Lehman fails to adequately disclose critical facts about the impact of their subprime portfolio on their financial condition. Given the dire circumstances known to the Individual Defendants, and Defendant Ernst, as of the end of fiscal year 2007, the mere disclosure of the amount of the subprime portfolio, without disclosure of the risks associated therewith, is materially misleading.

86.  In addition, for an investor to determine the true facts about Lehman's exposure to the subprime market, that investor would not only have to aggregate the information found in

793655.1

27

1    separate places in the consolidated financial statements, but it would also have to figure out the

2    relationship between the loans originated by Lehman and the securitizations related thereto.  Once

3    real estate loans are originated by Lehman, they are then packaged as securities (*i.e.*,

4    securitization), and sold to investors.  Lehman "derecognizes" the financial assets transferred as

5    securitizations once Lehman relinquishes control.  This has the effect of taking them off Lehman's

6    balance sheet.

7        87.    By failing to adhere to basic concepts of financial reporting and auditing, the

8    Individual Defendants and Defendant Ernst deprived investors such as Plaintiff of the information

9    necessary to make an informed decision about their investments.

## FIRST CAUSE OF ACTION

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

13        88.    Plaintiff incorporates by reference all the above allegations as though fully set forth

14    herein.

15        89.    This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k,

16    on behalf of Plaintiff against all Defendants.

17        90.    For the purposes of this claim for relief only, Plaintiff explicitly disclaims any

18    statement in the Complaint that alleges or can be construed to allege that Defendants committed

19    intentional misconduct or that Defendants acted with scienter or intent to defraud.

20        91.     Lehman was the issuer of Lehman Notes covered by a registration statement filed

21    with the SEC on May 18, 2005 and May 30, 2006.  The Lehman Notes were also issued pursuant to

22    supplemental prospectuses and pricing supplements filed with the SEC prior to the SM Pool's

23    purchase of the Lehman Notes.  Each of the Director Defendants signed, or authorized others to

24    sign on their behalf, the May 18, 2006 and May 30, 2006 registration statements as well as all

25    subsequent filings that were incorporated by reference into the May 18, 2006 and May 30, 2008

26    registration statements.

27    ///

28    ///

28

COMPLAINT FOR DAMAGES

92.     Prior to Plaintiff's purchases of the Lehman Notes by virtue of its participation in the SM Pool, the Offering Materials became effective or were declared effective by the SEC. The Offering Materials contained untrue statements of material facts and/or omissions of material facts required to be stated therein or necessary to make the statements therein not misleading, as alleged above.

93.     As a result of its participation in the SM Pool, Plaintiff was a purchaser of the Lehman Notes issued pursuant to the Offering Materials. The Notes purchased by the SM Pool in which Plaintiff was a participant were issued pursuant to the Offering Materials as filed by Lehman with the SEC, and those Notes are directly traceable to the false and misleading Offering Materials used by Defendants to solicit the purchase of the Lehman Notes.

94.     As a direct and proximate result of the making of false statements and/or omissions of material facts in the Offering Materials by Defendants, Plaintiff is entitled to recover from Defendants, jointly and severally, such damages as represent the difference between the amount paid by Plaintiff for the Notes and the true value of those Notes.

## SECOND CAUSE OF ACTION

### Violation of Section 15 of the Securities Act

### (Against Defendants Fuld, O'Meara, and Callan Only)

95.     Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

96.     This claim is brought pursuant to Section 15 of the Securities Act against Defendants Fuld, O'Meara, and Callan as control persons of Lehman.

97.     Fuld, O'Meara, and Callan are "control persons" of Lehman within the meaning of Section 15 of the Securities Act, by virtue of their positions of operational control of Lehman. At the time Plaintiff, through its participation in the SM Pool, purchased the Notes, Defendants Fuld, O'Meara, and Callan had the power and authority, and exercised the same, to cause Lehman to engage in the wrongful conduct complained of herein.

///

///

98.     Pursuant to Section 15 of the Securities Act, by reason of the foregoing, Defendants Fuld, O'Meara and Callan are liable to Plaintiff for Lehman's primary violations of Section 11 of the Securities Act.

99.     By virtue of the foregoing, Plaintiff is entitled to damages against Defendants Fuld, O'Meara and Callan.

## THIRD CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (Against All Defendants)

100.    Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

101.    Plaintiff asserts this claim for relief against all Defendants for aiding and abetting a breach of the fiduciary duty owed to Plaintiff in managing the financial assets entrusted to the SM Pool by Plaintiff.

102.    Pursuant to the Investment Policy Statements adopted by the County of San Mateo on an annual basis as required by statute, the SM Pool's principle objective was to provide safety for the participants in the Pool, including Plaintiff. The Investment Policy Statement was developed by the Treasurer of San Mateo County and reviewed and approved annually by the County Treasury Oversight Committee and the San Mateo County Board of Supervisors. That Statement, as adopted on January 2008, stated that "[p]reservation of principal is of primary importance. The objective is to minimize credit risk while recognizing and controlling market risk." The Statement also recognized the important public trust imposed on the Treasurer in his management of the Pool:

> In managing the investment portfolio, the Treasurer shall exercise a
> degree of professionalism that will sustain public confidence in the
> County and pool participants remembering that both investment
> instruments and the method of transacting investment business are
> subject to public scrutiny.... In the implementation of the
> Investment Policy, the County adheres to the guidance provided by
> the 'Prudent Person Rule,' whereby a fiduciary is obligated to ensure
> investments will be made with the exercise of judgment and care,
> under circumstances then prevailing, which persons of prudence,
> discretion and intelligence would exercise in the management of
> their own affairs, not for speculation but for investment, considering

1

2

        the probable safety of their capital as well as the probable income to
        be derived.

3        103.    As also stated in the Investment Policy Statement and as required by California

4  Government Code section 53600, *et seq.*, the SM Pool was limited as to the amount it could invest

5  in a particular issuer's corporate bonds and medium term corporate notes. As of May 31, 2008, the

6  SM Pool held Lehman commercial paper of $145 million and Lehman Notes and bonds of

7  $192,416,000 for a total of $338 million of Lehman issued securities, which represented

8  approximately 11.5% of the SM Pool's total assets of $2.936 billion. In June 2008, the SM Pool

9  maintained its $338 million position in Lehman securities, representing approximately 11.5% of its

10  assets. As of July 31, 2008, with a reduced asset base of $2.749 billion, the SM Pool held

11  $129,998,000 of Lehman commercial paper and $192,416,000 of Lehman Notes and bonds

12  increasing its percentage of Lehman securities to approximately 11.7%. Even as late as August 29,

13  2008, with growing concerns about Lehman's solvency, the SM Pool held Lehman commercial

14  paper of $119,900,000 and Lehman Notes and bonds in the amount of $154,646,000 for a total of

15  $275 million in Lehman securities representing approximately 10.3% of the SM Pool's total assets.

16        104.    At all relevant times, the Individual Defendants, as officers and directors of

17  Lehman, owed a fiduciary duty to Plaintiff as a participant in the SM Pool, by virtue of Lehman's

18  close relationship, through its officers, employees and agents, with the managers of the SM Pool.

19  The Lehman Notes were purchased by the SM Pool through the solicitation and recommendation

20  of Lehman employees and agents who at all times were controlled and directed by the Individual

21  Defendants. At the time of such solicitation and/or recommendation by Lehman's employees and

22  agents, Lehman knew the terms of the SM Pool's Investment Policy Statement, particularly that the

23  SM Pool's primary investment objective was the "preservation of principal." Such acts by

24  Lehman's employees and agents, at a time when the Individual Defendants knew, or should have

25  known, of the false and misleading consolidated financial statements prepared by Lehman

26  constituted a breach of the Individual Defendants' fiduciary duty owed to Plaintiff as a participant

27  in the SM Pool.

28  ///

1    105.    At all times, the Individual Defendants, by virtue of their positions as officers and

2    directors of Lehman, knew that the County of San Mateo and Buffington owed the highest

3    fiduciary duty to the SM Pool and its beneficiaries, including Plaintiff. At all times, each of the

4    Defendants provided the SM Pool with substantial assistance in the management of the public

5    funds entrusted to the SM Pool by its participants, including Plaintiffs.

6    106.    As a direct and proximate result of Defendants' aiding and abetting a breach of

7    fiduciary duty owed to participants in the SM Pool, Plaintiff has sustained damages as set forth

8    below.

9    **FOURTH CAUSE OF ACTION**

10   **Violation of California Corporation Code § 25400, _et seq._**

11   **(Against All Defendants)**

12   107.    Plaintiff incorporates by reference all the above allegations as though fully set forth

13   herein.

14   108.    This claim is made against all Defendants.

15   109.    Defendants disseminated within California false and misleading documents and

16   information concerning Lehman's financial condition, as hereinabove alleged, for the purpose of

17   inducing Plaintiff, through its participation in the SM Pool, to purchase and hold the Lehman

18   Notes. Defendants acted both individually and as part of a conspiracy in performing such acts. At

19   all times, Defendants knew or should have known that the documents and information they

20   disseminated, or assisted in disseminating, were false and misleading and/or failed to reveal

21   material facts necessary to make the statements not misleading. As a direct result of such

22   dissemination of false and misleading documents and information, Defendants knew that persons

23   purchasing and holding the Lehman Notes, including Plaintiff, would rely on such false statements

24   in purchasing and holding the Lehman Notes. Defendants made such false and misleading

25   statements for the purpose of inducing Plaintiff to purchase and retain the Lehman Notes through

26   the SM Pool.

27   ///

28   ///

793655 1

32

COMPLAINT FOR DAMAGES

1    110.   In violation of California Corporations Code section 25403, each of the Defendants

2  provided substantial assistance to each of the other Defendants in the dissemination of the false and

3  misleading statements.

4    111.   Each of the Defendants willfully participated in the wrongful acts alleged above.  As

5  a direct and proximate result of the wrongful acts and conduct of Defendants as alleged above,

6  Plaintiff has suffered financial harm and other general and special damages including damages

7  recoverable under California Corporations Code section 25500 and/or section 25501, in an amount

8  to be determined.  Plaintiff also seeks an award of prejudgment interest as provided by California

9  Corporations Code section 25500 and/or section 25501.

10                              **FIFTH CAUSE OF ACTION**

11                                 **Fraud and Deceit**

12                              **(Against All Defendants)**

13    112.   Plaintiff incorporates by reference all the above allegations as though fully set forth

14  herein.

15    113.   This claim is made against all Defendants.

16    114.   The conduct of Defendants as alleged herein constituted a fraud against Plaintiff.

17  Defendants made false representations, concealments, and omissions of material facts to Plaintiff,

18  knew and/or were reckless in not knowing that the same were false, and in so doing intended to

19  defraud Plaintiff.  Plaintiff did in fact innocently rely upon those false representations,

20  concealments, and nondisclosures by Defendants.  In relying on the false and misleading

21  statements of Defendants, Plaintiff was induced through its participation in the SM Pool to

22  purchase and retain the Lehman Notes, and such reliance was justifiable in light of the

23  circumstances.

24    115.   The conduct of Defendants, as alleged herein, violated sections 1709 and 1710 of

25  the California Civil Code, and renders Defendants liable to Plaintiff for fraud and deceit.

26  Defendants violated those provisions in the following manner:  (i) making representations of fact

27  that were not true and which Defendants did not believe to be true (Cal. Civ. Code § 1710(1));

28  ///

(ii) suppressing and/or failing to disclose facts that Defendants were bound to disclose, or giving information or other facts that were likely to mislead for want of communication of the facts suppressed or undisclosed (Cal. Civ. Code § 1710(3)); and (iii) making promises without any intent of performing them (Cal. Civ. Code § 1710(4)).

116.   Defendants aided and abetted, encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their wrongful goals, and other wrongdoing complained of herein. In taking such actions, each Defendant acted with an awareness of his, her, or its primary wrongdoing and realized that his, her, or its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and other wrongdoing complained of herein.

117.   Defendants pursued a conspiracy, common enterprise, and common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of herein was, among other things, performed for the financial benefit of Defendants at Plaintiff's expense by illegal, fraudulent, and wrongful activities. Each Defendant was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein, and was aware of his, her or its overall contribution to, and furtherance of, the conspiracy, common enterprise, and common course of conduct. Defendants' acts of conspiracy include, among other things, all of the acts that each are alleged to have committed in furtherance of the wrongful conduct complained of herein.

118.   As a direct and proximate result of the wrongful and fraudulent conduct of Defendants, Plaintiff has suffered and continues to suffer substantial economic losses and other general and specific damages, including but not limited to, out-of-pocket losses, payment of commissions and fees to Defendants, and lost interest, all in an amount to be determined according to proof at the time of trial.

119.   The wrongful acts of Defendants as complained of herein were done with malice, oppression, and intent to defraud, and with conscious disregard for the rights of Plaintiff, and the wrongful acts of Defendants were committed at the behest and in furtherance of the business of each other Defendant and/or were authorized and/or ratified by each Defendant. Plaintiff is entitled

under California Civil Code section 3294 to recover punitive damages from Defendants in an amount to be determined according to proof at the time of trial and which is appropriate to punish Defendants and make an example of Defendants in order to deter others from similar conduct.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

### (Against All Defendants)

120.    Plaintiff incorporates by reference all the above allegations as though fully set forth herein.

121.    This claim is made against all Defendants.

122.    Defendants made false representations, concealments, and nondisclosures to Plaintiff. In making said false representations, concealments, and nondisclosures to Plaintiff, and in doing the things alleged above, Defendants, and each of them, acted without any reasonable grounds for believing said false representations, concealments, and nondisclosures were in fact true, and intended thereby to induce the reliance of Plaintiff thereon. Plaintiff did in fact innocently rely upon said false representations, concealments, and nondisclosures in purchasing, through the SM Pool, the Lehman Notes and continuing to hold those Notes. Such reliance was justifiable in light of the circumstances.

123.    Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their wrongful goals, and other wrongdoing complained of herein. In taking such actions, each Defendant acted with an awareness of his, her, or its primary wrongdoing and realized that his, her, or its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and other wrongdoing complained of herein.

124.    As a direct and proximate result of Defendants' representations, concealments, and nondisclosures to Plaintiff and Plaintiff's justifiable reliance thereupon, Plaintiff has suffered and continues to suffer substantial economic losses and other general and specific damages, including but not limited to, out-of-pocket losses, fees to Defendants, and lost interest, all in an amount to be determined according to proof at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be rendered in favor of Plaintiff against Defendants as follows:

1.     For compensatory and general damages according to proof;

2.     For special damages according to proof;

3.     For prejudgment interest at the maximum legal rate;

4.     For punitive and exemplary damages according to proof;

5.     For the costs of the proceedings herein;

6.     For Plaintiff's reasonable attorneys' fees; and

7.     For all such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

Dated: December 16, 2008         By: _____

                          Bruce L. Simon
                          Esther L. Klisura
                          Ashlei M. Vargas
                          PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
                          44 Montgomery Street, Suite 1430
                          San Francisco, CA 94104
                          Telephone: (415) 433-9000
                          Facsimile: (415) 433-9008

                          Clifford H. Pearson
                          PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
                          15165 Ventura Boulevard, Suite 400
                          Sherman Oaks, CA 91403
                          Telephone: (818) 788-8300
                          Facsimile: (818) 788-8104

                          Geoffrey Spellberg
                          MEYERS, NAVE, RIBACK, SILVER & WILSON
                          575 Market Street, Suite 2600
                          San Francisco, CA 94105
                          Telephone: (415) 421-3711
                          Facsimile: (415) 421-3767

                          *Counsel for Plaintiff City of South San Francisco*

793655 1

36

COMPLAINT FOR DAMAGES



**Superior Court of California**
**County of San Mateo**
**Civil Department**
**400 County Center**
**Redwood City, CA 94063-1655**
**(650)363-4599**
**www.sanmateocourt.org**

| CITY OF SOUTH SAN FRANCISCO<br>· Plaintiff(s)<br><br>vs.<br>CITIGROUP GLOBAL MARKETS,<br>INC<br>Defendant(s) | **Notice of Complex Case Status Conference** |
|---|---|
| | Case No.: CIV 479412      Date: **02/17/09**<br>           Time: **9:00 AM**<br>           **Dept. 21** |

| Title:   CITY OF SOUTH SAN FRANCISCO VS. CITIGROUP |
|---|

You are hereby given notice of your Complex Case Status Conference. The date, time and department have been written above. At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules of Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1.  In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
    a.  **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
    b.  **Give reasonable notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

| **2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Complex Case Status Conference. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.** |
|---|

3.  An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6). The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in CRC 3.400(a).

4.  Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought. Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of

separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org

* Telephonic appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference.

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this Court, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Redwood City, California.

Date: 12/18/08                                    John C. Fitton,
                                                  Court Executive Officer/Clerk

                                                  By: RONALD D. LOPEZ
                                                  Deputy Clerk

Copies mailed to:

        BRUCE L SIMON
        44 MONTGOMERY STREET
        SUITE 1200
        SAN FRANCISCO CA 94104

# NOTICE OF CASE MANAGEMENT CONFERENCE

CITY OF SOUTH SAN FRANCISCO

**ENDORSED FILED**
**SAN MATEO COUNTY**

VS

DEC 1 6 2008

QINEROUP

Clerk of the Superior Court
By _____ R. Lopez
**DEPUTY CLERK**

Case No. **CIV 479412**

Date: 5 / 1 / 09

Time: 9:00 a.m

Dept _____ on Tuesday & Thursday
Dept. 22 on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a. Serve all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 201.7).

   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c. File **and serve** a completed Case Management Statement at least **15 days** before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions

   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than **30 days** before the date set for the Case Management Conference.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a. Referring parties to voluntary ADR and setting an ADR completion date;

   b. Dismissing or severing claims or parties;

   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Bruce L. Simon SBN 96241<br>PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP<br>44 Montgomery Street, Suite 1430<br>San Francisco, CA 94104 | **RECEIVED**<br><br>DEC 1 6 2008<br><br>CLERK OF THE SUPERIOR COURT<br>SAN MATEO COUNTY |

TELEPHONE NO: 415-433-9000     FAX NO:

ATTORNEY FOR *(Name)*: Plaintiff City of South San Francisco

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063-1655
BRANCH NAME:

CASE NAME:  City of South San Francisco v. Citigroup
Global Markets, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **CIV 4 7 9 4 1 2** |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount    (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE<br><br>DEPT |

*Items 1-6 below must be completed (see instructions on page 2)*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [X] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties   d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel   e. [X] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action *(specify)*: SIX (6)

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:

Bruce L. Simon SBN 96241
    (TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | *Legal Solutions Plus* | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |



| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| Bruce L. Simon SBN 96241<br>Esther L. Klisura SBN 221171<br>PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP<br>44 Montgomery Street, Suite 1430<br>San Francisco, CA 94104<br>Telephone: 415-433-9000<br>State Bar No.:<br>Attorney for: Plaintiff City of South San Francisco | **ENDORSED FILED**<br>**SAN MATEO COUNTY**<br><br>DEC 1 6 2008 |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | Clerk of the Superior Court<br>**By** ___ **N. Lopez**<br>DEPUTY CLERK |
| Plaintiff CITY OF SOUTH SAN FRANCISCO | |
| Defendant CITIGROUP GLOBAL MARKETS, INC., SUNTRUST<br>ROBINSON HUMPHREY, INC., ET AL | **CIV** 4 7 9 4 1 2 |
| Certificate Re Complex Case Designation | Case Number |

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1. In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

   - [x] Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).
   - [x] Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management
   - [ ] Box 5 – Is [or is not] a class action suit.

2. This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

CM-110

| | |
|---|---|
| ATTORNEY FOR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |

TELEPHONE NO.:                         FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS    Superior Court of California
MAILING ADDRESS   County of San Mateo
CITY AND ZIP CODE  400 County Center
BRANCH NAME       Redwood City, CA 94063-1655

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):  ☐ UNLIMITED CASE (Amount demanded exceeds $25,000)   ☐ LIMITED CASE (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                Time:              Dept.:            Div.:              Room:

Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  Party or parties (answer one):
   a. ☐ This statement is submitted by party (name):
   b. ☐ This statement is submitted jointly by parties (names):

2.  Complaint and cross-complaint (to be answered by plaintiffs and cross-complainants only)
   a.  The complaint was filed on (date):
   b. ☐ The cross-complaint, if any, was filed on (date):

3.  Service (to be answered by plaintiffs and cross-complainants only)
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served (specify names and explain why not):

      (2) ☐ have been served but have not appeared and have not been dismissed (specify names):

      (3) ☐ have had a default entered against them (specify names):

   c. ☐ The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4.  Description of case
   a.  Type of case in ☐ complaint   ☐ cross-complaint   (describe, including causes of action):

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

CM-110

| PLAINTIFF/PETITIONER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT | |

10. d.   The party or parties are willing to participate in (check all that apply)

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other (specify)

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

## 11. Settlement conference
☐ The party or parties are willing to participate in an early settlement conference (specify when):

## 12. Insurance
a. ☐ Insurance carrier, if any, for party filing this statement (name):

b. Reservation of rights:   ☐ Yes   ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case (explain):

## 13. Jurisdiction
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy   ☐ Other (specify):
Status:

## 14. Related cases, consolidation, and coordination
a. ☐ There are companion, underlying, or related cases.
(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:
☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by (name party):

## 15. Bifurcation
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

## 16. Other motions
☐ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):

Superior Court of California - County of San Mateo

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

Clerk of the Superior Court, Civil Division
Attention: Case Management Conference Clerk
Superior Court of California, County of San Mateo
400 County Center
Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

❑ Original signatures for all attorneys (and/or parties in pro per);
❑ The name of the neutral;
❑ Date of the ADR session; and
❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the San Mateo County Superior Court's ADR Panelist List and information sheets on individual panelists, they may go to the court's website (see below) or contact the ADR Coordinator at (650) 363-1962 or (650) 599-1070.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the ADR Panelist List or can be found on the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896. For further information regarding San Mateo Superior Court's ADR program, contact the ADR offices at (650) 599-1070 or the court's ADR web site at **http//www.co.sanmateo.ca.us.sanmateocourts/adr.htm**

ADR-CV-1 [Rev. 9/04]                                                                                    www.sanmateocourt.org

# Appropriate Dispute Resolution (ADR) Information Sheet
Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

## What are the Advantages of Using ADR?

- ❑ *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months

- ❑ *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- ❑ *More control & flexibility* – Parties choose the ADR process most appropriate for their case

- ❑ *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

- ❑ *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

- ❑ *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

- ❑ **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

- ❑ **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

- ❑ **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

- ❑ **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

- ❑ **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date. For questions regarding settlement conferences, call (650) 599-1076.

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

*Judicial Arbitration, one of t.  ̄ ̄ailable Appropriate Dispute Resolutic ̄ ̄ ̄DR) options, differs from other options in that it is usua  .ourt-ordered, unless the parties agree  ̄ it.*

## What are the Advantages of Using Judicial Arbitration?

❑ *Free* - Parties do not have to pay for the arbitrator's fee.

❑ *Fast* - Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

❑ *Informal* - The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

❑ The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

❑ During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

❑ Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

❑ Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

   ○ For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

❑ After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

❑ If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

❑ Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 (New September, 2007)

[CA Rule of Court §3.221]
www.sanmateocourt.org

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number) | Court Use Only |
|---|---|
| Superior Court of California, County of San Mateo<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655  (650) 363-4711 | |
| Plaintiff(s): | Case Number |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation                        ☐ Binding Arbitration (private)
☐ Neutral Evaluation                         ☐ Settlement Conference (private)
☐ **Non-Binding Judicial Arbitration CCP 1141.12**    ☐ Summary Jury Trial
☐Other: _____

Case Type: _____

Neutral's name and telephone number: _____

Date of session: _____

(Required for continuance of CMC except for non-binding judicial arbitration)

Identify by name the parties to attend ADR session: _____

---

ORIGINAL SIGNATURES

---

Type or print name of ☐Party without attorney          ☐Attorney for  (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant      Attorney or Party without attorney

---

Type or print name of ☐Party without attorney          ☐Attorney for  (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant      Attorney or Party without attorney

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

IT IS SO ORDERED:

DATE:                                                JUDGE OF THE SUPERIOR COURT OF SAN MATEO COUNTY

Superior Court of California County of San Mateo

# DIVISION II
## COURT MANAGEMENT - SUPERIOR COURT

### CHAPTER 1. FORM AND SERVICE OF PAPERS

Rule 2.0   Transfer of Court-Related Functions of the County Clerk to the Superior Court

Pursuant to the authority contained in Government Code section 69898, the court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, all of the powers, duties, and responsibilities required or permitted to be executed or performed by the County Clerk in connection with judicial actions proceedings, and records.

(Adopted, effective July 1, 1996.)

Rule 2.1  Form of Papers Presented for Filing

Reference. CRC, rule 2.100, et seq.

(Adopted, effective July 1, 1996) (Amended effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.1.1  Citations to Non-California Authorities

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.2   Requests for Judicial Notice

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.3  California Environmental Quality Act (CEQA)

If a petition for writ of mandate includes claims under CEQA (Public Resources Code section 21000 et. seq.), the case will be assigned to a judge designated to hear CEQA actions pursuant to Public Resources Code section 21167.1. Plaintiff shall identify the petition as being filed pursuant to "CEQA" on the face of the petition.

(Adopted, effective January 1, 1999)(renumbered from 2.1.4 effective January 1,2000)

### Rule 2.1.4 Documents Produced Through a Nonparty

If a party proposes to obtain documents in the custody of a nonparty, as by a subpoena duces tecum, and such documents may be produced by certification or otherwise in lieu of personal appearance by a witness custodian, the request for such documents should specify that they be delivered not later than the first day for which the trial is calendared.

(Adopted, effective January 1, 2000)

(c)  Cases filed after July 1, 1992

Upon the filing of a complaint after July 1, 1992, the case shall be subject to all of the civil case management system rules set forth below. Cases filed before July 1, 1992 shall also be subject to these rules except for subsection (d) (Filing and service of pleadings; exceptions)

(d)  Filing and service of pleadings; exceptions

(1)  Complaint: Except as provided in paragraph 5 below, plaintiff shall within 60 days after filing of the complaint serve the complaint on each defendant along with

(A)  A blank copy of the Judicial Council Case Management Statement;

(B)  A copy of Local Rule 2.3;

(C)  The Notice of Case Management Conference.

If a matter has been submitted to arbitration pursuant to uninsured motorist insurance, the plaintiff shall file a notice to that effect with the court at the time of filing the complaint, or at the time the matter is submitted. The notice shall include the name, address and telephone number of the insurance company, along with the claim number or other designation under which the matter is being processed.

(2)  Cross-complaint: Except as provided in paragraph 5 below, each defendant shall within 30 days after answering the complaint file any cross-complaint (within 50 days if compliance with a governmental claims statute is a prerequisite to the cross-complaint) not already served with the answer under Code of Civil Procedure section. 428.50 and serve with that cross-complaint

(A)  A blank copy of the Judicial Council Case Management Statement;

(B)  A copy of Local Rule 2.3;

(C)  The Notice of Case Management Conference.

(3)  Responsive pleadings: Except as provided in paragraph 5 below, each party served with a complaint or cross-complaint shall file and serve a response within 30 days after service. The parties may by written agreement stipulate to one 15-day extension to respond to a complaint or cross-complaint.

If the responsive pleading is a demurrer, motion to strike, motion to quash service of process, motion for a change of venue or a motion to stay or dismiss the case on forum non conveniens grounds, and the demurrer is overruled or the motion denied, a further responsive pleading shall be filed within 10 days following notice of the ruling unless otherwise ordered. If a demurrer is sustained or a motion to strike is granted with leave to amend, an amended complaint shall be filed within 10 days following notice of the ruling unless otherwise ordered. The court may fix a time for filing pleadings responsive to such amended complaint.

(4)  Proofs of service: Proofs of service must be filed at least 10 calendar days before the case management conference:

(5)  Exceptions for longer periods of time to serve or respond:

 

Superior Court of California, County of San Mateo

specified, relief from the scheduled trial date may not be obtained based upon the ground that counsel is engaged elsewhere.

(7)     Conference orders.  At the initial conference, the program judge will make appropriate pre-trial orders that may include the following:

- (A)    An order referring the case to arbitration, mediation or other dispute resolution process;

- (B)    An order transferring the case to the limited jurisdiction of the superior court;

- (C)    An order assigning a trial date;

- (D)    An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment;

- (E)    An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

- (F)    An order of discovery; including but not limited to establishing a discovery schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

- (G)    An order scheduling the exchange of expert witness information;

- (H)    An order assigning a mandatory settlement conference date pursuant to Local Rule 2.3(k) and 2.4; and

- (I)    Other orders to achieve the interests of justice and the timely disposition of the case.

- (8)    CourtCall Telephonic Appearances

    (A)    Reference CRC, Rule 3.670

    (B)    Procedure.  Telephonic appearances through the use of CourtCall, an independent vendor, are permitted at case management conference hearings.  A party wishing to make a telephone appearance must serve and file a Request for Telephone Appearance Form with CourtCall not less than five court days prior to the case management conference hearing.  Copies of the Request for CourtCall Appearance form and accompanying information sheet are available in the Clerk's office.  There is a fee to parties for each CourtCall appearance and fees are paid directly to CourtCall.  CourtCall will fax confirmation of the request to parties.

    (C)    On the day of the case management conference hearing, counsel and parties appearing by CourtCall must check-in five minutes prior to the hearing.  Check-in is accomplished by dialing the courtroom's dedicated toll-free teleconference number and access code that will be provided by CourtCall in the confirmation.  Any attorney or party calling after the check-in period shall be considered late for the hearing and shall be treated in the same manner as if the person had personally appeared late for the hearing.

Superior Court of California - County of San Mateo

state that parties have  (i) notified both the judicial arbitration and ADR coordinators, (ii) cancelled the judicial arbitration hearing  (iii) scheduled the ADR session within five months of the previously scheduled judicial arbitration hearing, and (iv) stipulated to a trial date, which is not more than six months from the previously scheduled judicial arbitration hearing

(i)     Stipulations to Private ADR

(1)     If a case is at issue and all counsel and each party appearing in propria persona stipulate in writing to ADR and file a completed Stipulation and Order to ADR with the clerk of the court at least ten (10) calendar days before the first scheduled case management conference, that conference shall be continued 90 days  The court shall notify all parties of the continued case management conference

(2)     If counsel and each party appearing in propria persona are unable to agree upon an appropriate ADR process, they shall appear at the case management conference

(3)     Following an appearance at a case management conference hearing, parties shall, within 21 calendar days , file a completed Stipulation to ADR and Proposed Order identifying the name of the ADR provider, date of ADR session and the names of those who will be in attendance at the ADR session  The completed Stipulation to ADR and Proposed Order shall be filed with the court by plaintiff's counsel  The parties, through counsel, if represented, shall confer with the court's Multi-Option ADR Project (M A P ) staff if they cannot agree on a provider  Plaintiff's counsel, shall additionally, send a copy of the completed Stipulation to the court's M.A.P  offices within the same 21-day period

(4)     All parties and counsel shall participate in the ADR process in good faith

(5)     To maintain the quality of ADR services the court requires cooperation from all parties, counsel and ADR providers in completing ADR evaluation forms, and returning these forms to the M.A.P. offices within 10 calendar days of the completion of the ADR process.

(6)     In accordance with the Code of Civil Procedure, section 1033.5(c)(4), the court, in its discretion, may allow the prevailing party at trial the fees and expenses of the ADR provider, unless there is a contrary agreement by the parties.

(j)     Setting Short Cause Matters

If the parties agree that the time estimated for trial is 5 hours or less prior to the conference, a written stipulation shall be filed at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference and a copy immediately sent to the Master Calendar Coordinator.  In the absence of a stipulation, either party may file a motion to have the matter designated a "short cause" and set the case accordingly.  All such matters shall be presumed short cause unless the contrary is established at the hearing on the motion.

(k)     Law and Motion

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)     Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two

(2) Any persons whose consent is required to authorize settlement shall personally attend; those parties that are corporations shall have in attendance an officer or other employee with authority to bind the corporation. Powers of attorney, oral or written, granting counsel settlement authority are unacceptable as a substitute for personal attendance at this conference. Defendant and cross-defendant shall personally attend if there is no insurance coverage, if there is an unsatisfied deductible, or if the insurance carrier is demanding that the insured contribute to settlement.

(3) With respect to any insured party, a representative of the insurance carrier with authority to settle which is meaningful considering the exposure to loss presented shall personally attend. If the claims representative in personal attendance has any limitation on his or her settlement authority, a representative of the carrier who has no such limitations shall be available to the court by telephone and shall remain available until released by the judge conducting the conference, regardless of the time of day at the location of that representative.

(4) Upon arrival at the department to which the conference has been assigned, counsel shall check in with the clerk and shall verify the attendance of those persons whose presence is required.

(5) Notwithstanding the provisions of CRC 3.1380(c), no later than five(5) court days before the date set for the settlement conference each party shall lodge with the office of the court administrator and serve on all other parties a written statement setting forth the following.

(A) A statement of facts.

(B) The contentions of each party to the action regarding liability and damages.

(C) An itemized list of special damages.

(D) In any case in which personal injury is claimed:

(i) A description of the nature and extent of any injury claimed, including residuals.

(ii) A description of the basis for and method of calculation of any claimed wage loss.

(E) The most recent demand and offer or a description of any other proposed settlement between or among the parties.

(6) All parties shall be prepared to make a bona fide offer of settlement.

(b) The personal attendance of any person who is required by these rules to be present may be excused only by the presiding judge upon application made prior to the day on which the conference is scheduled. Any such person whose attendance is excused must remain available by telephone until he or she has been excused by the judge conducting the conference regardless of the time of day at the location of that person.

(c) No conference may be continued without the consent of the presiding judge or, if known, the judge to whom the case has been assigned for conference.

Superior Court of California, County of San Mateo

## CHAPTER 4. JURY RULES

Rule 2.7 Length of Jury Service

In compliance with CRC 2.1002, a person has fulfilled his or her jury service obligation when he or she has:

    (a)    Served on one trial until discharged.

    (b)    Been assigned on one day for jury selection until excused by the jury commissioner.

    (c)    Attended court but was not assigned to a trial department for selection of a jury before the end of that day.

    (d)    Been assigned to a trial department for selection of a jury and has been excused by the trial judge.

    (e)    Served one day on call.

    (f)    Served no more than 5 court days on telephone standby.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

## Rule 2.7.1  Proposed Jury Instructions

(a)    Reference California Rules of Court, Rules 2.1055 and 2.1050.

(b)    The Trial Department shall determine in its discretion the timing of submission of proposed jury instructions.

(Amended, effective January 1, 2002) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

## Rule 2.7.2  Duty Of Counsel with Respect to Jury Instructions

Before delivery of proposed jury instructions to the trial judge and opposing counsel, counsel shall fill in all blanks, make all strikeouts, insertions and modifications therein which are appropriate to the case. Submission of a form, which requires additions or modifications to constitute a complete and intelligible instruction, shall not be deemed a request for such instruction.

In addition to a hard copy of the proposed jury instructions, counsel shall provide the modified instructions on a computer diskette, and a clean copy of the instructions to be given to the jury.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

## Rule 2.7.3  Form of Proposed Jury Instructions (CCP §§ 607a, 609.)

All proposed jury instructions shall conform to the requirements of California Rules of Court, Rule 2.1055. Any jury instructions requested after the conclusion of taking evidence shall be in writing. The court, in its discretion, may permit instructions to be sent into the jury room in "Booklet Form". In

## Rule 2.7.6 Refund of Jury Fees Duty to Notify Court

Jury fees shall be refunded pursuant to CCP Section 631.3 only if the party depositing the fees has given the master calendar coordinator written notice, at least two court days before the trial date, that the case settled, dropped or that the party's motion for continuance has been granted.

(Adopted, effective July 1, 2004 [former Rule 2.6])

## CHAPTER 5. GENERAL RULES

### Rule 2.8 Family Law Rules

The local rules of San Mateo Superior Court relating to Family Law are contained in Division V of these rules, infra.

(Adopted, effective July 1, 1996)

### Rule 2.9 Required Action

Action shall be taken on all calendared cases and a future date for action shall always be set. No case shall go "off calendar" without a future action being set.

(Adopted, effective July 1, 1996.)

### Rule 2.10 Interpreters and Translators

a)       Notice. When a party desires an interpreter, it shall be the responsibility of that party to give notice to the Court and all other parties of record. That party shall make arrangements for the presence and the payment of the interpreter.

b)       Qualifications. Unless the interpreter is an official court interpreter, the interpreter's name and qualifications shall be provided to the court and opposing counsel five (5) court days prior to the date of the interpreter's appearance . If the interpreter is an official court interpreter, no prior disclosure is required.

c)       Relations or friends. Without the consent of all parties, a relation or a friend may not be used as an interpreter or translator in a contested proceeding.

(Adopted, effective January 1, 2000)

### Rules 2.11 thru 2.19 (Reserved)

## CHAPTER 6. CIVIL TRIAL RULES

### Rule 2.20 Trial Motions, Briefs, Statements, and Witness Lists

Upon assignment to a trial department for trial by a jury, each party shall file with that department the following:

> (1)   Any in limine motions and response thereto;
> (2)   Any trial briefs;



Superior Court of California County of ... [illegible]

C.   Application to Designate or Counter-Designate an Action as a Complex Case

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 3, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought. Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

    (1)   Management of a large number of separately represented parties;
    (2)   Complexity of anticipated factual and/or legal issues;
    (3)   Numerous pretrial motions that will be time-consuming to resolve;
    (4)   Management of a large number of witnesses or a substantial amount of documentary evidence;
    (5)   Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
    (6)   Whether or not certification of a putative class action will in fact be pursued; and
    (7)   Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

D.   Noncomplex Counter-Designation.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case. Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

E.   Decision by Presiding Judge on Complex Case Designation; Early Status Conference.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case. This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter



# COURTCALL, LLC

*Telephonic Court Appearances*
6365 ARIZONA CIRCLE
LOS ANGELES, CALIFORNIA 90045
(TEL) (310) 342-0888 (888) 88-COURT
(FAX) (310) 743-1850 (888) 88-FAXIN

## How To Use CourtCall! - SAN MATEO

### Filling Out The Form

1. **Serve**: Not less than 5 Court Days before the hearing (or 4 30 PM the Court day prior to hearing for Dept 1 through 6/30/04 or Dept. 3 from 7/1/04 through 12/31/04) COMPLETELY fill out the original of the Request for CourtCall Appearance (the "Request Form"). Retain the original Request Form in your file. DO NOT FILE IT WITH THE COURT. Check the box indicating the method of payment of the fee INCOMPLETE REQUEST FORMS MAY RESULT IN A DELAY IN PROCESSING!!

2. **Fax to CourtCall**: Fax a copy of the Form to CourtCall not less than 5 Court days prior to the hearing (of 4 30 pm the Court day prior to hearing for Dept. 1 or Dept 3 as noted above). Do not fail to do so, as the CourtCall Calendar is set through these faxes!! LATE FILINGS, IF ACCEPTED, ARE SUBJECT TO A LATE FEE!!

3. **Payment by Credit Card**: Fill out credit card information *only* on the copy faxed to CourtCall and have that copy SIGNED by the PERSON WHOSE NAME IS ON THE CREDIT CARD

4. **Payment by Check**: Fax a copy of check - write case # on check-payable to Telephonic Hearing Account to CourtCall with your Form and mail your check and a copy of your Form to CourtCall.

5. **Proof of Payment/Calendar Confirmation**:
Under normal circumstances you should receive a Confirmation from CourtCall, by fax, within 24 hours of submission of a completed Request Form. The Confirmation will contain your teleconference number and access code (if any**).

IF YOU DO NOT RECEIVE YOUR FAXED CONFIRMATION FROM COURTCALL WITHIN 24 HOURS OF SUBMISSION, CALL COURTCALL IMMEDIATELY TO VERIFY YOUR STATUS - WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR!

FOR INFORMATION AND QUESTIONS ABOUT A COURTCALL APPEARANCE, CALL COURTCALL. NOT THE CLERK/COURT!

### When You Make The Call

* YOU MUST CALL THE TOLL FREE NUMBER ON YOUR CONFIRMATION 5 MINUTES BEFORE YOUR SCHEDULED HEARING TIME, NEVER USE A CELLULAR OR PAY PHONE. If prompted, dial your Access Code ** You will be advised whether you are joining the call in progress or if you are the first to call or you may be placed on "music-on-hold."

* If Court has commenced, DO NOT INTERRUPT! You will have an opportunity to speak. If the call is in progress and you hear voices, wait until an opportunity to speak arises without interrupting others. The Clerk may be performing a check in and will get to you. **

* After check-in wait until your case is called. Use your speakerphone while waiting if you are able to mute the microphone to eliminate ambient noise. When your case is called you MUST USE THE HANDSET. Identify yourself each time you speak and use common courtesy.

* If you are the first person on the call be patient, even if you experience silence or are placed on "music-on-hold," as the Clerk will join the call in due course. As others join you will hear a mild beep-beep" indicating others are on the line. Until your case is called do not speak other than with the Clerk. ** If the Clerk does not join the call within 15 minutes after your scheduled hearing time, have a staff member call CourtCall on our toll free Help Line - (888) 882-6878 and we will be happy to assist you. DO NOT LEAVE THE LINE!

**If the Confirmation from CourtCall does not list an access code with your assigned teleconference number, your matter will be heard privately, not in open court. The 5 minute check-in period will be conducted by a Teleconference Specialist who will conduct the conference in accordance with the Court's instructions. You will be placed on "music-on-hold" while you wait for the Judge to call your matter. The rules regarding cell phones and use of handsets apply. IF YOUR HEARING IS CONTINUED YOU MUST NOTIFY COURTCALL OF THE CONTINUANCE , IN WRITING, PRIOR TO YOUR COURTCALL APPEARANCE TO HAVE YOUR FEE APPLY TO THE CONTINUED HEARING. MATTERS CONTINUED AT THE TIME OF THE HEARING REQUIRE A NEW FORM AND ANEW FEE FOR THE CONTINUED DATE.

| [ATTORNEY OR PARTY WITHOUT ATTORNEY Name and Phone No.] | [DO NOT FILE WITH COURT] |
|---|---|
| | COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURTCALL[^13] |
| State Bar No.: | |
| ATTORNEY FOR (Name): | |
| San Mateo Superior Court | |
| | CASE NUMBER: |
| | JUDGE/DEPARTMENT: |
| | DATE AND TIME: |
| | NATURE OF HEARING: |
| REQUEST FOR COURTCALL TELEPHONIC APPEARANCE | |

1. _____ (Name of specific attorney appearing telephonically) requests a CourtCall telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: CourtCall Telephonic Appearances. I UNDERSTAND THAT *I DIAL* INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME.

2. Not less than five Court days prior to hearing (or 4:40 pm the Court day prior for Dept. 28), a copy of this document was served on all other parties and faxed to CourtCall, Telephonic Appearance Program Administrator at (310) 572-4679 OR (888) 88-FAXIN.

3. The non-refundable CourtCall Appearance Fee in the sum of $55.00 (plus additional fee of $35.00 if late filing is accepted) is paid as follows:

☐ Check (copy faxed-write case # on check) payable to CourtCall DO NOT MAIL ORIGINAL Signature below authorizes an ACH (electronic) debit in the amount and from the account listed on the check

☐ Charged to CourtCall Debit Account No.: _____

☐ Charged to VISA, MasterCard or American Express:

| TO BE COMPLETED ONLY ON THE COPY SUBMITTED TO CourtCall, LLC |
|---|
| Credit Card: ○ VISA ○ MasterCard ○ American Express |
| Credit Card Number: _____ Expiration Date: _____ |
| To pay by credit card, the copy of this form submitted to CourtCall, LLC, must be signed by the person whose card is to be charged and must be faxed to CourtCall at (310) 572-4670 or (888) 88-FAXIN with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card. |
| Date: _____ Name on Card: _____ |
| Type Name                    Signature |

4. Request Forms are processed within 24 hours. Call CourtCall if you do not receive a faxed Confirmation from CourtCall within 24 hours. WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURTCALL'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURTCALL.

Dated: _____

Signature

4.25.02          REQUEST FOR COURTCALL TELEPHONIC APPEARANCE